UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

JOSHUA NAVARRO, BENJAMIN
KOMITA, JADEN KREKOW, KYLE
STEWART, MASON YASKOVIC,
THOMAS FRANCIS, and on behalf
of similarly situated individuals,

      Plaintiffs,

vs.

FLORIDA INSTITUTE OF TECHNOLOGY,
INC., a Florida corporation,

      Defendant.
_____/

## COMPLAINT

Plaintiffs JOSHUA NAVARRO, BENJAMIN KOMITA, JADEN KREKOW, KYLE STEWART, MASON YASKOVIC, THOMAS FRANCIS, and on behalf of similarly situated individuals (herein after collectively referred to as "Student/Athletes" and "Plaintiffs"), by and through the undersigned counsel, file this Complaint against Defendant FLORIDA INSTITUTE OF TECHNOLOGY, INC. ("FIT" and/or "Florida Tech"), and allege as follows:

## NATURE OF THE ACTION

1.    Male student/athletes enrolled at FIT bring this action to challenge FIT's failure to provide equitable athletics opportunities for its male students and equitable treatment of male student athletes, including FIT's announced elimination of a viable male sports team, with a venerable history and strong public support: men's rowing.[1]

2.    FIT is a recipient of financial assistance from the United States Department of Education ("Department") to support its programs and activities.

---

[1] FIT also announced the elimination of women's rowing, both men's and women's cross-country teams and the men's golf team.

ARTHUR T. SCHOFIELD, P.A. │ Via Jardin │ 330 Clematis Street │ Suite 207 │ West Palm Beach, FL 33401
(561) 655-4211 │ Facsimile (561) 655-5447
www.flalabor.com

3.     FIT's actions have caused harm to Plaintiffs, and to those who are similarly situated, and constitute intentional, prohibited discrimination based on sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX") and its implementing regulation at 34 C.F.R. Part 106, which is applicable to universities that receive financial assistance from the Department.

4.     Title IX requires educational institutions receiving federal funds to provide equal opportunity and equal treatment in athletics without regard to gender. FIT receives substantial federal funding yet has failed to provide its male undergraduate students with an equal opportunity to participate in athletics, as compared to the opportunities provided to its female undergraduate students. Specifically, FIT has failed to satisfy any of the following measures of compliance with Title IX's mandate to provide equal opportunities for its male student athletes:

> a. It has failed to provide male student athletes with athletic opportunities at a rate that is "substantially proportionate" to their undergraduate full-time enrollment rate as compared to the female enrollment rate; and
>
> b. It has failed to demonstrate a "history and continuing practice of program expansion responsive to the interests and abilities of the sex that has been historically underrepresented;" and
>
> c. It has failed to show that the interests and abilities of the underrepresented sex have been fully and effectively accommodated.

5.     Plaintiffs seek declaratory and injunctive relief, with immediate reinstatement of the men's rowing team, as well as additional judicial remedies to ensure FIT's compliance with Title IX, including, but not limited to, orders commanding the institution to establish additional men's sports team opportunities for its male undergraduates.

## PLAINTIFFS

6.     Plaintiffs are male student athletes at FIT who have been adversely affected by actions taken by the Department of Athletics that are described in detail herein. They include the following:

a. Joshua Navarro is a rising sophomore at Florida Tech who spent his freshman year as a dedicated member of the men's rowing team. Coming from Vero Beach, Florida, Joshua graduated from Indian River Charter High School in 2021 and rowed 6 years prior to arriving at Florida Tech. Team captain of Vero Beach Rowing his senior year, he was committed to self-improvement, motivating others, and rowing with everything he had, every day. Joshua initially walked on but was offered an athletic scholarship his second semester after proving himself in the first varsity boat.

b. Benjamin Komita is from Chalfont, Pennsylvania where he attended Central Bucks High School South. Benjamin was a competitive swimmer for 13 years before coming to Florida Tech and walking onto the men's rowing team as a freshman. He rowed as a member of the varsity four in his freshman year, making the grand finals at the SIRA Championships in 2018. Benjamin decided to become a coxswain and earned a scholarship in this role. He was elected Captain for the 2021–2022 season. He coxed the men's varsity four to a fifth-place finish at the 2022 IRA national championships this past year, the best finish for any boat in Florida Tech history. After graduating with an undergraduate degree in Ocean Engineering in December 2021, Benjamin is now a graduate student studying coastal engineering and expects to graduate in May 2023. He graduated his undergraduate degree with a 3.89 GPA and currently has a 4.0 GPA in his master's degree studies.

c. Jaden Krekow is a sophomore at Florida Institute of Technology. Before coming to Florida Tech, he rowed for four years at Dallas United Rowing in Texas. His freshman year rowing at Florida Tech was also the first year that the team implemented a lightweight program in addition to the esteemed heavyweight program. At the end of the season, he was awarded the Freshman Athlete of the Year, which is given to one freshman across all sports at the university, for the accomplishments of the lightweight team beating rowing powerhouses such as Columbia and Harvard during the

spring. During his freshman year he also excelled in academics and was named to the Florida Tech Athletic Director's Honor Roll. In addition to academics and athletics, he also participates in ROTC at Florida Tech and intends to commission as an Officer in the Army upon completion of his bachelor's degree.

d. Kyle Stewart is an upcoming senior and fourth year member at Florida Tech and on the men's rowing team. He was born in Annapolis, Maryland and raised in Bowie, Maryland. Mr. Stewart had always been an athlete growing up but never had a chosen sport. Going into his freshman year of high school he ended up on the rowing team where his interest in the sport and the community the sport garners took off. He ended up rowing on the novice team for one year and varsity team for three. Additionally, he was a varsity athlete on the swim team for all four years in high school. Mr. Stewart decided to attend Florida Institute of Technology after much thought to pursue his Computer Science degree and to continue his rowing career. Without the sport of rowing with the direction and purpose it gave him throughout high school and college, Mr. Stewart's family often jokes about how he would have ended up. Rowing has been impactful enough on Mr. Stewart that during the summer 2022 he coached new rowers at a local club in Florida and went back home to coach new rowers at his Alma Mater. Post-graduation Mr. Stewart intends to pursue a career in his Computer Science field.

e. Mason Yaskovic is a senior at Florida Institute of Technology, studying Mechanical Engineering, and is entering his fourth year as a rower at Florida Tech, his eighth consecutive year rowing. Born and raised in Rockledge, Florida, Mr. Yaskovic graduated from Edgewood Jr/Sr High School as an AP Scholar. In addition to founding and serving as acting president of the Environmental Science Club at Edgewood, Mr. Yaskovic also competed for Space Coast Rowing through all four years of high school. Though starting from humble beginnings as a member of the middle school summer rowing

camps, he dedicated an immense amount of time and energy to the team, earning himself the position of team Captain his senior year. With aspirations of rowing for Florida Tech's nationally recognized and locally famous men's varsity team, Yaskovic worked to improve his personal records throughout his senior year, amidst rigorous academic courses and leading a rowing team that was undergoing a change in head coaches. This earned him a walk-on offer for the Florida Tech men's rowing team, and an opportunity to compete at the highest collegiate level. Though never the fastest rower on the team, Yaskovic remained a positive force for all his teammates and held the aspiration of becoming the captain of the team entering his senior year. Since the demotion of the men's rowing team at Florida Tech, Yaskovic co-founded and has been appointed to serve as the President of the Florida Tech Rowing Club and took a position as the Athletics, Club Sports, and Intramurals Liaison within the Student Government Association; and coordinated with coaches and affected athletes in hopes of keeping men's rowing alive at Florida Tech.

f. Thomas Francis was born and raised in St. Louis, Missouri. At the age of 12 he began rowing competitively following in his brothers' footsteps. He had tried every sport he could think of, but nothing gave him the sense of teamwork and dedication that rowing did. In his high school rowing career, he became team captain for two years and went to the youth national championships three times, earning a bronze medal in 2017. After much thought, Mr. Francis found his way to Florida Tech and, while doubtful of his decision, he quickly found a home there both in academics and on the Men's rowing team. He is currently a fourth-year undergraduate, majoring in Electrical Engineering, and hopes to continue rowing with a scholarship for a fifth year while he obtains his master's degree. Having already completed three years of undergraduate studies and multiple graduate classes, he holds a 3.69 GPA; he has been on the Dean's List all semesters. For the past two years, he has been awarded the Intercollegiate Rowing

Coach Association (IRCA) Scholar Athlete. He had hoped to continue his trend of high performance in rowing and academics for the rest of his time at Florida Tech.

7.     Upon FIT's termination of the Men's rowing, members were given the opportunity to form a Club. The incredible coaching staff upon which the rowing team used to rely has left FIT to pursue other positions as varsity coaches. Several of the members of the men's rowing team no longer participate at all in the sport with its demotion. Club sports at FIT receive no scholarship money and extremely limited funding from the institution. Club sports rely on dues and donations to pay coaches' salaries and equipment expenses and most operational expenses. With the lack of scholarships and the prohibitive cost of dues, it will be nearly impossible for FIT to attract skilled rowers and build the next generation of successful rowers at the institution.  With the lack of any funding, it will be a very short time before the membership dwindles to an unsustainable level.  Club status is the end of Men's rowing at FIT. Club status is not in any measure the same status as a varsity sport.

## **DEFENDANTS**

8.     Defendant FIT, located in Brevard County, Florida, is a private institution which receives federal funding and whose Department of Athletics is charged with the administration of women's and men's intercollegiate sports programs. It is incorporated in the State of Florida.

## **JURISDICTION AND VENUE**

9.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3), (4).

10.     Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b), as all the claims arose in Brevard County, Florida.

## CLASS ACTION ALLEGATIONS

12.     The individual student plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) on behalf of themselves and on behalf of a class or classes consisting of all present and future FIT male undergraduate students—including currently enrolled students and prospective students—who have sought, who seek, or who will seek to obtain the benefits of intercollegiate athletics sponsored by FIT by participating in such.

13.     All members of the proposed class(es) are aggrieved persons under federal civil rights law because of FIT's actions, policies, and practices. The named individual student plaintiffs seek declaratory and injunctive relief on behalf of themselves and one or more classes certified by the court to prevent FIT from engaging in future unlawful conduct and to rectify the effects of present and past discrimination.

14.     This matter is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) in that:

(a)The members of the class(es) are so numerous (any high school male athlete who could be recruited to attend FIT as to make joinder of all of them impracticable. According to the latest information available (2020-2021 academic year) on the U.S. Department of Education Equity in Athletics Data Analysis website, only 11% of full-time undergraduate students (351 of 3,010) at FIT are provided with the educational opportunity to participate in intercollegiate athletics; these are rare, highly rationed educational opportunities that are not equally available to men and women at this private university. Title IX of the Education Amendments of 1972 requires that males and females be provided with equal opportunities to participate, defining equal opportunity as athletic participation proportional to the percent of full-time undergraduate males and female students, respectively. In 2020-21, the FIT undergraduate student body was 69.4% male and 30.6% female while athletic participation was 58.6% male and 41.4% female. This 10.8% difference created a male participation gap of 123 athletes, the number of male participants who would have to be added to the athletic program for male athletic

participation to be equal to 69.4% if female athlete participation remained at their current level of 145 participants. Or FIT could choose to keep male participation at its current level of 206 participants and cut 54 females from a total of 145 women participating to meet the 69% male/30% ratio or could choose to add men's sports and less drastically reduce female participation to achieve that goal. Certainly, no male sports opportunities should be reduced.

(b) All male students at FIT face unlawful barriers to intercollegiate athletic participation and unequal treatment by their university's athletics program. Furthermore, FIT's decision to eliminate a viable men's varsity team directly harms the opportunities for males, as well as for the members of that team, as well as all future FIT students who have an interest and ability to participate at the varsity level at FIT, or other emerging sports, teams.

(c) There are questions of law and fact common to the members of the class(es). These common questions of law and fact predominate over any questions concerning individual members of the class(es). The common questions include FIT's compliance with Title IX as well as common facts involving FIT's athletics programs and its treatment of its male athletes.

(d) The claims of the named individual student plaintiffs, which involve claims of unequal athletics opportunities and treatment, are typical of the claims of the proposed members of the class(es).

(e) The named student plaintiffs will fairly and adequately protect the interests of the members of the class(es). Their attorneys are experienced in class action litigation.

(f) FIT has acted on grounds applicable to the class(es), thereby making final declaratory and injunctive relief appropriate with respect to the class(es) as a whole.

## BACKGROUND FACTS

15.    The FIT Rowing program began in 1968 when FIT's founding president, Dr. Jerome Keuper, asked his assistant, Robert Dunlap, to start it. Dr. Keuper became

familiar with rowing during his undergraduate days at the Massachusetts Institute of Technology and thought rowing would be a natural fit for FIT.

16.     In the early years, the goal was to win the state rowing championship in the varsity eight (FIT had won the freshman/novice race in 1968).

17.     Dr. Keuper was present at Disney World in 1974 when the men's varsity rowing team captured its first varsity eight state championship. To celebrate the tenth anniversary (1978) of FIT rowing, Dr. Keuper got his friend and board of trustee member, Ralph Evinrude, to send the varsity eight to the Henley Royal Regatta in England.

18.     The success of the men's and women's rowing teams expanded from the state to the regional championships and on to the Dad Vail Regatta in Philadelphia, Pennsylvania, which is considered the hub of rowing in the United States with its historic Boathouse Row.

19.     The success of the men's and women's rowing programs at FIT have been a point of pride for the students, faculty, and staff, not only for the rowing programs' success on the water, but also for the quality of student-athletes attracted to the university. Already known for its academic excellence, FIT earned a reputation, in addition, as a place providing opportunities for undergraduate students to be trained in a program recognized for producing outstanding rowers who excel at the Olympic and international levels.

20.     The men's rowing program has continued its winning tradition at the Dad Vail Rowing Regatta with victories in the varsity eight in 1982, 1988, 2015, 2016, and a victory in the varsity four in 2022. There have also been numerous lightweight eight and freshman heavyweight victories over the years.

21.     These victories were met with challenges from strong Philadelphia Division I varsity programs that include Drexel University, Temple University, St. Joseph's University, and LaSalle University.

22.     The successes of FIT's student-athletes in rowing can be attributed to opportunities to compete against outstanding universities throughout the country.

23.     Competition is not restricted to a division. Ivy League teams traveling south for training often seek out training locations where there is competition nearby. Another crucial factor for FIT student-athletes involved in rowing is that they have the opportunity

to compete in every race. Being able to compete is an important motivator that contributes to personal success.

24.     The number of FIT men's and women's rowing alums who have rowed in the Olympics and in World Competitions speaks volumes about the quality of the program:

a.   Valerie Barber '78 - 1980 U.S. Olympic Team;

b.   Jeanne Flanagan '78 – 1980 U.S. Olympic Team. She was also a member of the 1984 U.S. Olympic Team, winning a gold medal in women's varsity eight and a member of the U.S. National teams in 1979, 1981, 1982, and in 1985, in which her vast experience and leadership skills led the coaches to place her in the stroke position of the U.S. Eight.

c.   Tom Bohrer '86 – U.S. Olympic Team in 1988, winning a silver medal. Also, a member of the U.S. Olympic Team in 1992, winning a silver medal and serving as the captain of the team. He participated in the World Rowing Championships in 1989, 1991, and 1993. In 1989 he was awarded Male Rower of the Year in the United States and he became the World Indoor Rowing Champion in 1992.

d.   Fran Reininger '81- 1983 U.S. Pan American Team's coxed four, which won a gold medal. In 1987 he was a member of the national team in the double sculls that competed in the World Rowing Championships in Copenhagen. In the nineties, as a single sculler competing in the World Cup, he achieved a rating of sixth in the world. Additionally, he stroked Oxford University to a victory over Cambridge University in England's the Boat Race.

e.   Casey Baker '74 – 1977 U.S. National Rowing Team that participated in the World Rowing Championships; and in 1983, he was a member of the U.S. Pan American Rowing Team.

f.   Chris Lambert '08 – 2015 U.S. National Lightweight Team in the Lightweight Eight in which he won a bronze medal, and he rowed in the 2011 World Lightweight Rowing Championships, representing the U.S. in the Quadruple Sculls.

g.  Taylor Brown '09 – 2015 U.S. Pan American Team. He was also a member of the 2013 U.S. Rowing Team that participated in the World Cup rowing the straight pair and in 2014 & 2015, he rowed in the World Rowing Championships in the pair-with-coxswain.

h.  Jonas Karalius '13 - 2012 Lithuanian Under 23 National Rowing Team that participated in the U23 Men's World Rowing Championship in the Eight. He was also a member of the 2011 Lithuanian National Rowing Team that participated in World Rowing Championships.

i.  Spencer Freeman '13 - Canadian junior men's eight that participated in the 2010 World Rowing Junior Championships.

j.  Mindaugas Beliauskas '14 MS '15- 2012 Lithuanian Under 23 National Rowing Team that participated in the U23 Men's World Rowing Championships in the eight. He was also a member of the 2011 Lithuanian National Rowing Team that participated in World Rowing Championships.

k.  Ernestas Zarskis '15 MA '16 - 2012 Lithuanian Under 23 National Rowing Team that participated in the U23 Men's World Rowing Championships in the eight. In that same year, he rowed in the straight pair that won the Under 23 World Championships.

l.  Martynas Mickus '16 - 2013 Lithuanian Under 23 National Rowing team that competed in the U23 World Rowing Championships.

m.  Jose Gomez-Feria '15 - 2016 Spanish National Lightweight Team that competed in the World Rowing Championships.

n.  Kevin Coyle '17 - Kevin was a member of the 2013 U.S. Men's Junior National Team that competed in the World Rowing Junior Championships; he rowed in the quadruple sculls.

o.  Matas Lukosevicius '19 MA '20- 2014 Lithuanian Junior National Team that competed in the World Rowing Junior Championships. He also rowed in the 2013 World Rowing Junior Championships in the men's four.

p. Zilvinas Visockas '20 - a member of the 2015 Lithuanian Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships. He was also a member of the 2014 Lithuanian Junior National Team that competed in the World Junior Rowing Championships.

q. Domantas Marocka '25 - 2021 Lithuanian Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships. He was also a member of the 2018 Lithuanian Junior National Team that competed in the World Junior Rowing Championships.

r. Arnedas Kelmelis '25 - a member of the 2021 Lithuanian Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships.

s. Justas Kuskevicius '25 - 2021 Lithuanian Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships.

t. Jaime Rus Alba '17 MS '18 - 2017 Spanish Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships. He was also a member of the 2016 Spanish Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships.

u. Josip Bobinac '18 - 2014 Croatian Rowing Junior National Team that competed in the World Rowing Junior Championships, He is also a member of the 2013 Croatian Rowing Junior National Team that competed in the World Rowing Junior Championships.

v. Kristjan Markovic '19 - 2014 Slovenian Rowing Junior National Team that competed in the World Rowing Junior Championships; he rowed in the quadruple sculls.

w. Sandro Gardella Bozzo '26 - 2021 Peruvian Rowing Under 23 National Team that competed in the World Rowing Under 23 Championships.

x. Hugo Ruzicka '26 - 2021 Czech Republic Rowing Junior National Team that competed in the World Rowing Junior Championships.

y. Natalia Arasa Bonavila '20 – Spanish Rowing Under 23 National Teams that rowed in the Under 23 Rowing World Championships.

z. Federica Pala '19 – Italian Rowing Under 23 National Team that competed in the Under 23 World Championship.

aa. Nour Ettaieb - 2016 Tunisian National Rowing Team that competed in the Olympics. She also rowed on the 2021 Tunisia Olympic Team in the lightweight double.

**A Startling Announcement: FIT Terminates the Rowing Program**

25. On June 28, 2022, FIT administrators startled the University's undergraduate student-athletes, their coaches, alum, and even national observers when they announced to team members that FIT would be terminating its respective intercollegiate scholarship sports programs, to take effect in academic year 2022-2023.

26. Cut programs included rowing, cross-country and golf. Upon information and belief, the combined annual cost (coaches' salaries, scholarships, and operational costs) for those teams was approximately $1.8M; the cost of Women's Basketball alone is approximately $650,000.

27. According to a statement issued by FIT President Robert King, on July 15, 2022, the cuts were made to allow an allocation of greater resources to other sports to better compete and succeed in the Sunshine State Conference.

28. The statement did not explain how, after years of national championships and being the top-performing athletic program at FIT, rowing was cut to focus on other programs.

29. Ideally, FIT would reinstate all the sports teams recently cut (both male and female sports), and then add new opportunities for men as required to comply with Title IX.

30. At the time the team cuts were announced, FIT was not compliant with its obligations under Title IX to provide male and female undergraduates with varsity athletics opportunities and scholarships in proportion to their respective full-time student body enrollment percentages. Female student-athletes were being awarded substantially more

participation opportunities and scholarships, proportionately, than were male student-athletes.

31.     The cut of five (5) teams and three (3) programs did not remedy FIT's sex discrimination practices. FIT will still be providing female students with far more athletics opportunities than the proportionate number of full-time undergraduate female students, more scholarship dollars and better treatment than the proportionate share of its full-time undergraduate male students.

32.     Based on published information, before the decision was made to eliminate these programs, FIT was not providing men with equal sports opportunities or equal scholarships and was not treating men's athletics programs equally with its women's athletics programs and was not providing men and women with equal athletic scholarship opportunities, placing the institution far out of compliance with Title IX.

33.     Specifically, based on reports made annually to the U.S. Department of Education's Equity in Athletics Data Analysis, pursuant to the Equity in Athletics Disclosure Act of 1994 ("EADA"), for the 2020-2021 year, men represented 69% of the 3,010 full-time undergraduate population, with 2,088 men attending FIT. Women represented 31% of the full-time undergraduate population at 922 women. EADA FIT, *available at* https://ope.ed.gov/athletics/#/institution/details. Despite this, men only accounted for 58.7% of the athletes. This resulted in a participation gap of more than 120 opportunities that were not being, but should have been, provided to men. In 2019-2020, men were shorted 101 participation opportunities based on their undergraduate enrollment percentage of 71.3%, as disclosed as required by the EADA.

34.     While the pandemic caused some potentially outlier years during 2019-2020 and 2021-2022, the longer-term, multi-year data demonstrate that FIT has been out of compliance with Title IX's participation prong for men in 14 of the last 16 years (and 16 of the last 18 years when including the pandemic years).

35.     Indeed, from academic years 2014-2015 to 2020-2021, the data demonstrate that men were shorted more than 100 participation opportunities given their full-time undergraduate enrollment in each of those years. This is more than sufficient to field a viable Men's rowing team.

36.     In 2018-2019, men constituted 71.3% of the undergraduate population at FIT, but only received 64.2% of the athletic opportunities, resulting in a participation gap of 132 (or a gap of 7.1%, although the number is the relevant analysis, not the percentage), and discrimination against men.

37.     While EADA and Title IX counting are not the same, EADA tends to underrepresent participation gaps because of the counting methodology, and it is therefore likely that these gaps are even greater than the amounts above stated.

38.      It appears there are material discrepancies in FIT's reporting of full-time enrollment of men and women to the EADA, and the Integrated Postsecondary Education Data System, the Common Data Set Number, which are all consistent, and what FIT shared in pre-suit communications.

39.     For instance, in the 2020-2021 school year, FIT reported 2,088 men and 922 women to the EADA and Common Data Set, but in pre-suit communications stated that there were 2,338 men and 1,323 women for that year. It is unclear what online students are being counted to arrive at these distinctly different figures, but Title IX requires full-time undergraduate enrollment to be counted, and follows exactly EADA and Common Data set figures.

40.     In addition, given that FIT cut football in 2019, which constituted more than 100 participation opportunities for male students, without adding a men's team of equivalent size, FIT could not comply with the participation prong of Title IX.

41.     The cut to the men's rowing team, in addition to the other cut programs, does not result in compliance with Title IX's participation prong. In fact, based on October of 2022 enrollment data, and the web rosters for the remaining sports, FIT will be even further out of compliance with Title IX's participation prong, with a gap of 126 opportunities missing for men.

42.     FIT cannot satisfy the other prongs (Prongs Two and Three) of the Title IX's participation opportunity analysis as it has not consistently expanded opportunities for men (indeed, it has cut them), and it has not regularly assessed the gender equity status of its athletics program. Further, FIT has not fully met the interests and abilities of the

underrepresented sex, or men, because it has cut a viable Men's rowing team, where the men remain ready and interested in remaining as members of that varsity sport.

43.     FIT removed from its website the roster numbers for the teams that were cut, which makes it impossible for Plaintiffs to compare EADA data to roster data for the years in which those teams were sponsored varsity sports.

44.     To the extent that FIT seeks to include or count eSports participants as part of its male athletes, to do so would not remedy its non-compliance with Title IX. Moreover, based on Title IX language and the OCR guidance interpreting the same, eSports should not be, and has never been, counted for Title IX compliance purposes.

45.     Male students at FIT have also been shortchanged with respect to athletic financial aid, or athletic scholarships. For every year from 2004-2005, to 2020-2021, men were underpaid in terms of the amount of aid that they received. In 2020-2021, the most recent year for which data are available, male varsity athletes were shortchanged by more than $458,000 in athletics financial aid. The cumulative total over the past more than 15 years resulted in men being shortchanged by more than $10,500,000 in scholarship funding if athletic opportunities had been provided in amounts consistent with their undergraduate enrollment.

46.     Further, on August 3, 2022, the Athletic Director for FIT announced that the university will spend $3,300,000.00 to $3,700,000 to convert sports fields from natural grass to artificial turf surfaces. This capital expenditure would primarily benefit the lacrosse teams. And, on the following day, it was reported that that team will also be able to hire an assistant coach.

47.     Plaintiffs are presently and continuously injured by Defendants' violation of Title IX, an intentional discrimination action perpetrated against male athletes based on sex. The adverse impacts include, but are not necessarily limited to, the following:

> a. All the Plaintiff student-athletes chose to attend FIT, in whole or in part, because FIT offered them the opportunity to compete in intercollegiate varsity rowing. For several of them the FIT Men's rowing program was the most important consideration in their selection of the university they chose to attend.

b. These Plaintiff student-athletes reacted to the news that the Rowing program was eliminated with shock, disbelief, and grief. Their participation on this team has been, and is, central to their happiness at FIT and a critical part of their academic achievements.

c. All the Plaintiffs are accomplished athletes. All of them participated in high school sports at the varsity level, many with distinction. Some of them turned down opportunities at other universities to attend FIT.

d. Some of these Plaintiffs will graduate this year. But they are adversely affected by the attrition of team-mates that seek transfer opportunities to colleges and universities who continue to support men's rowing programs. FIT had one of its best recruiting years last year and once the announcement was made about the cut, a sizeable portion of those incoming Freshman decided to transfer elsewhere. Those who transfer will be faced with additional burdens and expenses that they did not anticipate when they enrolled at FIT.

e. Cutting the men's rowing program is adversely affecting incoming students, as well as already-enrolled students. The University in announcing its team-cut decision stated that it would support the cut programs as Club sports. However, if so, the affected student-athletes will incur significant unplanned out of pocket costs to participate in rowing as a club sport causing them financial harm to continue participating in the sport that drove their decision to attend the University. It will also be, effectively, the end of rowing at FIT with no scholarship money to attract new and excellent rowers, no money for coaches' salaries and extremely limited funding for operational expenses and equipment. The physical and mental benefits of participating in sports at the university level have been scientifically affirmed.

f. If not enjoined by this Court, FIT's recent cut will violate Title IX by allowing FIT to terminate any men's team where there is already a failure to comply with Title IX that disproportionately affects male student-

athletes. Due to the fleeting nature of collegiate athletics, Plaintiffs will suffer irreparable harm if this decision is allowed to move forward. Monetary damages would not make Plaintiffs whole. Injunctive relief is necessary to prevent further degradation of the men's rowing team.

g. If not enjoined by this Court to increase men's varsity sports opportunities and scholarships (in addition to an injunction preventing the termination of the men's rowing program) Defendant will continue to fail to comply with Title IX. Due to the fleeting nature of collegiate athletics, Plaintiffs will suffer irreparable harm if this decision is allowed to move forward. Monetary damages would not make Plaintiffs whole. Injunctive relief is necessary to prevent further degradation of the men's rowing team, where team members and others are already looking for other opportunities.

## STATEMENT OF CLAIMS

## COUNT I: VIOLATION OF TITLE IX – EQUAL PARTICIPATION

48.     Plaintiffs incorporate by reference paragraphs 1 through 47.

49.     Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), reads that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ..

50.     FIT has failed to meet any of the three criteria for compliance with Title IX's equal participation requirement.

51.     The elimination of a viable men's rowing team is impermissible given Defendants' intentional sex discrimination and its lack of compliance with Title IX.

## COUNT II: TITLE IX – EQUAL TREATMENT

52.     Plaintiffs incorporate by reference paragraphs 1 through 47.

53.     FIT's failure to treat male athletes substantially equally with respect to athletic financial assistance, equipment and supplies, tutoring, locker rooms, practice and

competitive facilities, housing and dining, and recruitment violates Title IX's equal treatment requirements.

### COUNT III: TITLE IX – EQUAL SCHOLARSHIP OPPORTUNITIES

54.     Plaintiffs incorporate by reference paragraphs 1 through 47.

55.     FIT, according to EADA data from 2018-2019, provided $2,345,171 in athletic-related aid to women's athletic programs, and FIT provided $3,980,357 to men's athletic programs, resulting in $78,425 underpayment to men given their undergraduate enrollment with respect to its Title IX scholarship payment obligation. This is more than a 1% differential for men and women in scholarships based on undergraduate enrollment numbers. For 2020-2021, the most recent year for which data are available, the differential was more than 12% short for men based on the participation opportunities that FIT should be providing. FIT's failure to treat male athletes substantially equally with respect to athletic financial assistance violates Title IX's equal treatment requirements.

### COUNT IV: TITLE IX – INJUNCTION

56.     Plaintiffs incorporate by reference paragraph 1 through 47.

57.     Plaintiffs will suffer irreparable harm if a temporary preliminary injunction is not issued. The details for this will be set forth in the Motion and Memorandum of Law in Support.

58.     The balance of equities favor the plaintiffs as FIT will not suffer harm or injury from temporary preliminary injunction. The details for this will be set forth in the Motion and Memorandum of Law in Support.

59.     Plaintiffs have a reasonable probability of succeeding on the merits of their Title IX claims. The details for this will be set forth in the Motion and Memorandum of Law in Support.

60.     The public interest would be served by maintaining the men's rowing team by preventing gender discrimination under Title IX. The details for this will be set forth in the Motion and Memorandum of Law in Support.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and award the following relief:

(a) Certify this action as a class action for declaratory and injunctive relief on behalf of all present and future FIT male students, including currently enrolled students (students admitted for the 2022-2023 academic year), and prospective students, who participate, seek to participate, or have been deterred or prevented from participating in or obtaining the benefits of, intercollegiate athletics sponsored by FIT;

(b) Declare that FIT has engaged in a continuing pattern and practice of discrimination against men based on sex in intercollegiate athletics in violation of Title IX and its applicable regulations, policy interpretation, and clarifications;

(c) Issue a temporary restraining order and preliminary injunction ordering FIT not to eliminate the men's rowing;

(d) After a hearing on the merits, issue a final injunction ordering FIT to not eliminate men's rowing and to provide the team with funding, staffing, and other benefits commensurate with its status as an intercollegiate varsity team; ordering FIT to establish one or more additional men's sports teams and to provide said teams with funding, staffing, and other benefits commensurate with their status as intercollegiate teams; prohibiting FIT from eliminating any other men's intercollegiate teams unless, both before and after the elimination, equality of opportunity for men has been achieved; prohibiting FIT from retaliating in any manner against Plaintiffs or class members for asserting their legal rights to equal opportunity and equal treatment; and prohibiting FIT from treating male athletes in a gender-discriminatory manner, including but not limited to, providing unequal scholarship dollars to men proportional to their required Title IX participation;

(e) Award Plaintiffs their costs and expenses, including an award of reasonable expert witness and attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

(f) Award such other and further relief as this Court deems just and proper.

/s/ Arthur Schofield, Esq.
ARTHUR T. SCHOFIELD, P.A.
Via Jardin Building
330 Clematis Street, Suite 207
West Palm Beach, Florida 33401
Telephone: (561) 655-4211
Facsimile: (561) 655-5447
Fla. Bar No. 984434
E-mail: aschofield@flalabor.com

-and-

James C. Larew Esq.
(*Appearing Pro Hac Vice*)
Claire M. Diallo, Esq.
(*Appearing Pro Hac Vice*)
LAREW LAW OFFICE
504 E Bloomington St.
Iowa City, IA 52245
Phone: (319) 337-7079
Fax: (319) 337-7082
Email:
James.Larew@LarewLawOffice.com
claire.diallo@larewlawoffice.com

ATTORNEYS FOR PLAINTIFF