UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No. 6:22-CV-01950-CEM-EJK

JOSHUA NAVARRO, et al., and on
behalf of similarly situated individuals,

      Plaintiffs,

v.

FLORIDA INSTITUTE OF TECHNOLOGY,
INC., a Florida corporation,

      Defendant.

_____/

**PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move this Court for an order certifying this action as a class action, appointing Plaintiffs as class representatives, and appointing the undersigned attorneys as class counsel.

Plaintiffs brought this action against Defendant Florida Institute of Technology, Inc. ("FIT" or "Florida Tech") on behalf of a class of similarly situated persons to enforce their civil rights under Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 *et. seq.*) ("Title IX"). Plaintiffs are male student athletes ("Student Athletes") at FIT who allege that FIT discriminates against men in the administration and operation of its athletics program. FIT has a significant history of failing to comply with Title IX.

Specifically, in this putative class action, Plaintiffs allege that FIT violates

1

Title IX by, among other things: (1) failing to provide male students with an equal opportunity to participate in varsity intercollegiate athletics; (2) failing to provide male students with equal access to athletic financial assistance; and (3) failing to provide male athletes with the same or comparable benefits provided to female athletes. Plaintiffs filed this action primarily to obtain injunctive relief to stop the systemic, ongoing sex discrimination in FIT's athletics department. Accordingly, the Student Athletes seek relief not just for themselves but for all persons who are harmed by and will continue to be harmed by FIT's illegal, discriminatory actions.

## II.     FACTUAL BACKGROUND

FIT is a private research university located in Melbourne, Florida, that receives federal financial assistance. *See,* Complaint [DE #2, p. 6] and Answer, [DE#24, p. 5]. According to the Integrated Postsecondary Education Data System ("IPEDS"), Florida Tech had 3,080 full-time undergraduate students in 2021-2022, of which 2,159 were men, and 921 were women.[1] This is the same number reported to the Equity in Athletics Data Analysis ("EADA") for 2021-2022.[2] FIT's online fall 2022-2023 enrollment data do not include the gender breakdown, but using FIT's

---

[1] https://nces.ed.gov/ipeds/datacenter/institutionprofile.aspx?unitId=133881&goToReportId=6. Plaintiffs only report the data as relates to Florida Tech, a separate entity under IPEDS, and not Florida Tech Online, as Plaintiffs maintain that those students cannot be counted for Title IX where they could live anywhere in the U.S. or world, and have different requirements to be full-time, that would not meet the NCAA requirements to be a student athlete. *See* Motion [DE#28, Ex.2, pp. 27-28]. While FIT argues that it can count online students for Title IX purposes, it admitted that it uses different identification numbers for its reporting to IPEDS, and they have different standards applicable to full-time enrollment. *See* Response [DE#37, Ex. 2, ¶¶8-9, 11, 12].

[2] This data is produced pursuant to the Equity in Athletics Disclosure Act, *available at* https://ope.ed.gov/athletics/#/institution/details.

produced numbers without online enrollment, there were 2976 students, of which 2047 were men (69%) and 920 were women (31%).[3]

Florida Tech has an athletics department with varsity athletics teams that is currently run by the Director of Athletics, Jamie Joss. *See,* Response [DE#37, Ex.1, ¶2]. In October of 2021, FIT's Board of Trustees, through its Athletics Committee, asked for a "full review of the University's athletic[s] program." *Id.,* ¶9. Prior to that review, in 2020, FIT cut the men's football team (representing 122 participation opportunities in 2019-2020, and 121 in 2018-2019). *Id.,* Ex.4, p. 4. In 2019, FIT had cut men's tennis (as well as women's tennis and women's golf), which had represented 11 men's opportunities in 2018-2019. *Id. See also* Ex. "A", FT0516.[4] The decisions with respect to what scholarships to provide, as well as the approval of budgets and expenditures for teams, are made at the university administration level led by the Board of Trustees, University President, Chief Financial Officer, Director of Athletics, Associate Director for Business Operations, and Associated Athletic Director for Scholar-Athlete Services. *See* Defendant's Answer to Interrogatories, No. 15, Ex. "B" hereto.

In January of 2022, Mr. Joss provided two different options to "improve the competitiveness and sustainability of [FIT's] athletic[s] programs." Ex. "A",

---

[3] *See* Response [DE#37, Ex.4, p.5]; Ex. "C" (removing online enrollment); *see also* Florida Institute of Technology, Fall 2022 Official Count Report, *available at* https://www.fit.edu/media/site-specific/wwwfitedu/oir/documents/Census-Report---Fall-2022.pdf.
[4] Ex. "A" contains Confidential Information and, as such, Plaintiffs have not attached it to this filing. They are waiting on agreement with the Defendant to redact or to seek an *in camera* review or to seek leave to file under seal.

FT0504. One was to increase spending of about $8-$10 million, and the other alternative was to adjust the number of sports offered by FIT through "elimination or transition to club sports[.]" *Id.* Thereafter, in May of 2022, Mr. Joss formally recommended the elimination or transition to club of men's rowing, women's rowing, men's cross country/distance track, women's cross country/distance track, and men's golf. *Id.,* FT0508. At the time, Men's rowing offered 22 spots. *See,* Response [DE#37, Ex. 4, p. 4]. Men's cross-country constituted 12 positions in 2021-2022. *Id.* The Athletics Committee reviewed the proposal to "right-size [FIT's] athletic[s] program sports, transitioning men's and women's rowing, which are legacy sports and have experienced success over the years, men's and women's cross country/distance track, and men's golf to club sports." Ex. "A", FT0500. The proposal reduced FIT's varsity athletics offerings to eleven Sunshine State Conference ("SSC") sports and was approved unanimously. *Id.,* FT0502.

On June 28, 2022, as its men's rowing and cross-country teams were preparing for their next season, FIT announced that the teams would be cut from its varsity status.[5] The termination decision also included men's golf, as well as women's rowing and women's cross-country. *Id.* Regardless of the reasons for the decision, it was made as a whole, treating the athletics program as one in reviewing and making

---

[5] *See* Florida Tech Panthers, *Florida Tech Realigns Athletics Offerings to Focus Resources, Increase Competitiveness*, June 28, 2022, *available at* https://floridatechsports.com/news/2022/6/28/athletics-news-florida-tech-realigns-athletics-offerings-to-focus-resources-increase-competitiveness.aspx (hereinafter "Florida Tech Panthers").

the decision. *See* Response [DE#37, Ex.1, ¶¶9-12, 15-23]

As the Court knows, the Plaintiffs sought and obtained a preliminary injunction. The evidence presented at the hearing established that FIT has not provided male students with varsity athletics opportunities that are substantially proportionate to their enrollment relative to female students for 16 of the past 18 years. *See,* Motion [DE#28, Ex. 2, p. 11]. When using the numbers produced by FIT, but removing eSports and online enrollment, Plaintiffs' expert, Dr. Donna Lopiano, determined that FIT still fell short of 121 participation opportunities for 2022-2023. *See,* Comparison Chart, Ex.t "C".[6] In 2020-2021, even before the cuts to three men's teams, FIT was still short 117 participation opportunities when one did not count eSports or online enrollment. *Id.* This is enough unfilled opportunities to field several men's teams, such as golf or tennis, both of which were recently eliminated. Ex. "A", FT0516. Plaintiffs also allege that Florida Tech has short-changed men in the provision of financial aid. Motion [DE#28, Ex. 2, pp. 31-33). Despite the gender proportionality of undergraduate student body (69% male to 31% female), FIT in 2022-2023 provided women with 50.2% of scholarship funds, and men only 49.8%. Ex. "B", #11. Plaintiffs further alleged (and Defendant has not argued otherwise) that FIT has failed to expand the opportunities for men, and in fact, has recently significantly reduced them. Motion [DE#28, Ex. 2, p. 16]. Men's interest in sports, however, including at the club level, has not waned, with Florida Tech even hosting

---

[6] This was Pl.'s Hr'g Ex.1A referenced in the Court's Order [DE#60, p. 9-10]

a men's ice hockey club team. *See,* Reese Van Putten Dec., ¶12, Ex. "D". In addition, there are significant numbers of men's intramural sport participants. *Id.*

On February 17, 2023, the Court issued an Order Granting Motion for Preliminary Injunction ("Order") enjoining Florida Tech from "taking any action in furtherance of eliminating the men's rowing team or any men's intercollegiate athletic team at the institution pending a full trial on the merits or until the Court orders otherwise." Order [DE#61, p. 23]. Even after reinstating the men's rowing team, and more recently, the men's cross-country team,[7] assuming full rosters of 34 men, FIT has still not closed the significant gap based on its own data given the 121 male-gap. *See* Ex. "C".[8]

FIT's Student Athletes, represented here by Plaintiffs, have been directly and adversely affected by the intentional gender discrimination. As a result of these Title IX violations, FIT must add men's varsity athletics participation opportunities. Plaintiffs further contend that FIT must either reallocate the athletics financial aid it offers or increase the amount it provides to male athletes. Finally, Plaintiffs contend that FIT must equalize the benefits provided to athletes [DE#71, ¶¶55-56], as required by 34 C.F.R. 106.41(c). As set forth below, these claims are inherently class-based and the primary remedy is injunctive relief.

---

[7] Plaintiffs learned on May 23, 2023, that FIT had reinstated the men's cross-country team to its varsity status from an email from the club sport coordinator. *See* Ex. "D", ¶15

[8] Doing the math as Dr. Lopiano would (DE#28, Ex. 2, at 14), adding 34 men to the 305 total athletes makes 339 athletes, of which 207 would then be men. That still leaves 87 opportunities short for men (132/.31 = 426, minus 207 and 132 = 87).

## III.  ARGUMENT

### A. Class Definition and Class Nature of the Claims

Plaintiffs[9] seek to certify a class defined as follows:

> All present, prospective, and future male students at the Florida Institute of Technology, Inc. who are harmed and want to end FIT's sex discrimination in: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes.

Certification of such a class in Title IX athletics cases is appropriate because the discrimination itself is inherently class-based and is measured on a program-wide basis. Athletics teams are sex-segregated into men's teams and women's teams so that males and females do not compete for the same opportunities. Schools choose how many athletics participation opportunities to provide to males and females by deciding which sports to offer for each sex. They also choose how much athletics financial aid to provide to male and female athletes. Finally, because the teams are sex-segregated,[10] schools discriminate whenever they provide more or better

---

[9] Plaintiffs are undergraduate and graduate students at FIT, including a few who recently graduated. Amended Complaint [DE#71]. The men's rowers are still competing on behalf of their school, after the conclusion of the academic year. *See* Yaskovic Dec., ¶¶6-8, Ex. "E". Those who recently graduated still maintain a year of eligibility to compete in their varsity sport should they decide to attend FIT again. *See* Exs. "D" and "E". To the extent that the cross-country season is complete, and certain Plaintiffs have graduated, they retain standing for injunctive relief where they can demonstrate some "likelihood of return." *Becker v. N.D. Univ. Sys.*, No. 3:22-cv-100, 2023 U.S. Dist. LEXIS 3625, at *11 (D.N.D. Jan. 9, 2023) (citation omitted); *see also Doe v. Morehouse Coll., Inc.*, Civil Action No. 1:21-cv-02572-SDG, 2022 U.S. Dist. LEXIS 146807, at *28-31 (N.D. Ga. Aug. 16, 2022) (reviewing meaning of "student" under Title IX and finding that the possibility of being able to attend courses at Morehouse from Spelman sufficed).

[10] FIT lists eSports as a coed sport. Given the Court's determination that eSports do not count as an athletic activity or sport for purposes of Title IX, Order [DE#61, p.13], Plaintiffs do not address this mixed club.

benefits to the athletics participants of a particular gender.

Florida Tech has acted in a manner that applies generally to the class in refusing to equally accommodate the interests of male students in its intercollegiate athletics on a program-wide basis. Equitable and declaratory relief is appropriate and the primary relief sought by Plaintiffs on behalf of the class. Class certification is therefore appropriate under Fed. R. Civ. P. 23(b)(2). Indeed, the class action vehicle is particularly appropriate to address claims of discrimination against a class, though a rigorous analysis must still take place. *See, Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1558 (11th Cir. 1986) (comparing specific allegations on behalf of women in case from more general discrimination allegations that were overturned by the Supreme Court in *Gen. Tel. Co. v. Falcon of Sw.*, 457 U.S. 147, 157 (1982) ("racial discrimination is by definition class discrimination"); 8 H. Newberg & A. Conte, *Newberg on Class Actions* § 24:1, pp. 5-9 (4th ed. 2002).[11]

Given that Title IX cases are measured program-wide, they are inherently class-based. Defendant either violates Title IX or it does not. The violation is measured by how FIT treats male students as a group and does not depend upon any

---

[11] *See also Increase Minority Participation by Affirmative Change Today, Inc. v. Firestone*, No. TCA 79-895, 1980 U.S. Dist. LEXIS 16028, at *6-8 (N.D. Fla. Nov. 7, 1980) (noting that Rule 23(b)(2) was particularly applicable in the context of civil rights litigation where a "party is charged with discriminating unlawfully against a class usually one whose members are incapable of specific enumeration.") (quoting 1966 Committee Notes to Rule 23, Subdivision (b)(2)); *cf. Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1346-47 (11th Cir. 1983) (reviewing *Falcon* guidance that discrimination suits are often "by their very nature class actions" but still required to meet Rule 23 requirements and more than an allegation of general discrimination). Plaintiffs here can meet several of Rule 23(b) requirements but focus on Rule 23(b)(2) given the primary request for injunctive relief.

individual student. For example, under Count I, Defendant either provides a "substantially proportionate" number of athletics participation opportunities to male students as a group, or it does not. If Defendant does not, then it must add opportunities until it does.[12]

Courts have routinely recognized the class-based nature of Title IX claims and have certified classes including present, prospective, future, and deterred female students.[13]

---

[12] Similarly, under Count II, FIT either provides male athletes with financial assistance proportionate to their participation, or it does not. If it does not, then it must provide additional aid to male athletes until it does or reallocate the existing aid between male and female teams. Under Count III, small differences in Defendant's treatment of male and female teams do not constitute Title IX violations unless, overall, FIT provides women's teams with more or better benefits than it provides men's teams. In other words, it would be legal for FIT to provide the women's soccer team with more or better benefits than the men's soccer team if FIT, in turn, provided the men's lacrosse team with more or better benefits than the women's lacrosse team. Again, the claim itself requires a review of how FIT treats male athletes as a class (as opposed to individuals) compared to how it treats female athletes as a class.

[13] *See Biediger v. Quinnipiac Univ.*, No. 3:09cv621 (SRU), 2010 U.S. Dist. LEXIS 50044, at *27-28 (D. Conn. May 20, 2010) (certifying class of "present, prospective, and future female students at Quinnipiac University" regarding declaratory and injunctive relief on Quinnipiac's allocation of athletic opportunities, allocation of athletic financial assistance, and allocation of benefits to varsity athletes); *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 957 (D. Minn. 2018) (certifying class of "present, prospective, and future female students at St. Cloud State University who are harmed by an want to end St. Cloud State University's sex discrimination" under three prongs of Title IX); *Cohen v. Brown Univ.*, 991 F.2d 888, 893 (1st Cir. 1993) (certifying class of "all present and future Brown University women students and potential students who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics funded by Brown"); *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332, 335-36 (3rd Cir. 1993) (certifying class of "all present and future women students at I.U.P. who participate, seek to participate, or are deterred from participating in intercollegiate athletics at the University"); *Haffer v. Temple Univ.*, 678 F. Supp. 517, 521 (E.D. Pa. 1987) (certifying class of "all current women students at Temple University who participate, or who are or have been deterred from participating because of sex discrimination in Temple's intercollegiate athletic program."). *See also Brust v. Regents of the Univ. of Cal.*, 2008 U.S. Dist. LEXIS 134974, at *22 (E.D. Cal. Oct. 23, 2008); *Boucher v. Syracuse University*, 164 F.3d 113 (2nd Cir. 1999); *Paton v. New Mexico Highlands University*, 275 F.3d 1274 (10th Cir. 2002); *Ridgeway v. Montana High School Ass'n*, 633 F. Supp. 1564, 1567 (D. Mont. 1986), aff'd 858 F.2d 579 (9th Cir. 1988); *Bucha v. Illinois High School Ass'n*, 351 F. Supp. 69 N. D. Ill. 1982); *Leffel v. Wisconsin Inter-scholastic Athletic Ass'n*, 444 F. Supp. 1117,

**B. Standard Applicable**

Plaintiffs bear the burden of establishing the requirements of Rule 23.

*Carriuolo v. GM Co.*, 823 F.3d 977, 981 (11th Cir. 2016). "[Q]uestions concerning

class certification are left to the sound discretion of the district court." *Freeman v.*

*Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir. 1983). The Court may be

required to look beyond the pleadings in determining the class certification

question, including a "rigorous analysis" of the prerequisites of Rule 23(a).

*Carriuolo*, 823 F.3d at 911 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 133

S.Ct. 1426, 1432 (2013)).

Rule 23(a) provides that a proposed class must satisfy four prerequisites:

> (l) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th

Cir. 2000) (setting forth prerequisites and noting they are commonly referred to as

"numerosity, commonality, typicality, and adequacy of representation") (citations

omitted).

Pursuant to Fed. R. Civ. P. 23, Plaintiffs must satisfy all four of the

requirements of section (a) and fall into one of the three types of class actions set

_____

1119 (E.D. Wis. 1978); *Communities for Equity v. Michigan High School Athletic Association*, 192 F.R.D. 568 (W.D. Mich. 1999).

forth in section (b). *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1308 (11th Cir. 2008); *see also Carriuolo v. GM Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (describing the same and setting forth all subsections of 23(b)(1)-(3)). This class action falls under section (b)(2): "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[14]

"Rule 23(b)(2) has been liberally applied in the area of civil rights." *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2022 U.S. Dist. LEXIS 153590, at *27-28 (M.D. Fla. Aug. 18, 2022) (citing, *inter alia*, Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.)). Class actions can provide an efficient tool to resolve significant issues in an efficient manner, conserving judicial resources. *See, e.g.*, *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be representative, wasteful, and an extraordinary burden on the courts."). Class certification can also assist in preserving claims where a plaintiff may have only transient standing, such as the fleeting university years. *See, e.g., Beasley v. Ala. State Univ.*, 3 F. Supp. 2d 1325, 1344 (M.D. Ala. 1998) (describing the "inherently transient standing" of a student plaintiff and noting that under such circumstances the "termination of a

---

[14] *See also Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997) (reviewing Rule 23(b)(2) and noting that civil rights cases against parties charged with "unlawful, class-based discrimination are prime examples.") (citing, *inter alia*, Adv. Comm. Notes, 28 U.S.C. App., p. 697).

class representative's claims does not moot the claims of unnamed members of the class") (citing *Gerstein v. Pugh*, 420 U.S. 103, 11-11 n.11 (1975)).

The class action determination is made "as soon as practicable after commencement of [the] action." Fed. R. Civ. P. 23(c)(1). Generally, the merits of Plaintiffs' claims are not considered as part of the Rule 23 analysis, but there are times where evidence relevant to the certification is "intertwined" with the merits. *See Nelson v. United States Steel Corp.*, 709 F.2d 675, 679-80 (11th Cir. 1983) ("[E]vidence relevant to the commonality requirement is often intertwined with the merits."). To the extent relevant, therefore, Plaintiffs cite and rely on the record created before the Court as part of their preliminary injunction motion, as well as the attachments filed herewith.

### C. The Proposed Class Satisfies the Pre-Requisite of Ascertainability

There is an implicit requirement that the proposed class must be "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302-03 (11th Cir. 2021).[15] As described below, the class definition used by Plaintiffs is common to Title IX actions and is adequate and ascertainable. *See Biediger v. Quinnipiac Univ.*, No. 3:09cv621 (SRU), 2010 U.S. Dist. LEXIS 50044, at *8-9 (D. Conn. May 20, 2010) (holding that the inclusion of future members does not cause a

---

[15] The Eleventh Circuit does not require administrative feasibility as part of the ascertainability analysis; the class must be capable of determination, but it not need be "capable of *convenient* determination." *Id.* at 1303 (emphasis in original).

class to be unascertainable) (citing, *inter alia, Cohen v. Brown Univ.*, 991 F.2d 888, 893 (1st Cir. 1993)).

### D. The Proposed Class Satisfies the Requirements of Rule 23(a)

#### 1. Numerosity: The Proposed Class is so Numerous as to Render Joinder of all Class Members Impracticable

The numerosity requirement is satisfied when the number of class members makes the joinder of all members as named plaintiffs impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number for this requirement, but generally, "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice para. 23.05 at n.7 (1978)). The focus, however, is not on whether the class is "too few" but really on the impracticality of joinder. *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1022 (5th Cir. 1981) ("The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.").

In seeking to represent future or prospective students, Plaintiffs readily satisfy the impracticality of joinder. *See Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) ("[J]oinder of unknown individuals is certainly impracticable."); *see also Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986) ("The joinder of unknown persons is clearly impracticable"); *Cmtys for Equity v. Mich. High Sch. Athletic Ass'n*, 192 F.R.D. 568, 571-72 (W.D. Mich.

1999) (finding Title IX class that included future and deterred students satisfied numerosity requirement). While these students can be determined, or ascertained, it is impractical to join such individuals. *See Biediger,* 2010 U.S. Dist. LEXIS 50044, at *9 (holding that given future attendees of the university will be subject to an imminent threat of injury if they enrolled, they will be harmed by the sex discrimination in the athletic program).[16]

Plaintiffs also readily satisfy the numerosity requirement. The provision of athletic opportunities in a substantially disproportionate manner harms not only the named Plaintiffs, but also other recently cut men's teams as well as all the current, prospective, and future male students. Plaintiffs demonstrated the substantial disproportionality at the preliminary injunction.[17] Also, the men's cut teams in 2022 alone were 45 men (22 rowers, 12 cross-country runners, and 11 golfers), satisfying the numerosity requirement. Motion [DE#37, Ex.4, p.4]. Additionally, more than 100 men were eliminated from the football team in 2020 and 11 men were cut from the tennis team in 2019. *Id.* FIT's undergraduate body consists of at more than

---

[16] The District Court in *Biediger* also noted that the harm of discrimination at the University had already been demonstrated as part of a preliminary injunction, and that based on the same, current, prospective, and future female students who are injured by the gender disparity want it to be remedied. *Id.* at *10-11. In the same way, men at FIT who are current, future, and prospective students want the gender discrimination to be remedied in the athletic department.

[17] Even using FIT's own numbers (but discounting eSports and online enrollment), FIT must keep all existing men's sports and had to add more than 121 additional men's athletic participation opportunities in order to comply with Title IX's requirements for participation equity in 2022-2023. *See* Ex. "C". If Defendant reaches participation equity, then it must reallocate more than $859,038 of FIT's existing athletic financial aid budget to men. *See,* Motion DE#28. Ex.2, p.32].

2,000 men. *See* Ex. "C". These male students were denied an equal opportunity to participate in athletics. In addition, incoming freshmen and transfer students increase the number of those being harmed. The number of current, prospective, and future male students harmed by Florida Tech far exceeds the 40-plus threshold.[18] Plaintiffs therefore satisfy the numerosity requirement of Rule 23(a)(1).

### 2.  **Commonality: There are Common Questions of Law and Fact**

Under Rule 23(a)(2), commonality involves issues subject to class-wide proof requiring that "there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). The commonality requirement is met where Plaintiffs' and class members' claims arise out of Florida Tech's athletic program, including its practices and policies with respect to the provision of male athletic opportunities, among other questions. A central question (and common issue) is whether FIT discriminates against men in its varsity athletics program by failing to provide equal athletic opportunities in violation of Title IX. *See,* Motion [DE#28, Ex.2, p.13-20]. Under each analysis of Title IX, there are common issues (and corresponding common factual and legal questions) to the class:

> (1) whether [FIT] provides equal athletic participation opportunities [to men];
> (2) whether [FIT] provides equal athletic scholarships or financial assistance [to men]; and
> (3) whether [FIT] provides equal treatment and benefits [to men].

---

[18] Indeed, plaintiffs need not show "the precise number of members in the class[,]" particularly where class wide discrimination has been alleged. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

34 C.F.R. §§ 106.37(c), 106.41(c).[19] The common factual questions therefore include, but are not limited to: (1) whether FIT provides male varsity athletic opportunities that are substantially proportionate to the male enrollment at FIT; (2) whether online student enrollment can count for the purposes of Title IX analysis; (3) whether FIT violates Title IX in its allocation of varsity sport opportunities; (4) whether FIT has provided equal athletic financial aid to men or violated Title IX in the provision of the same; (5) whether the other allocation of benefits and treatment to men's teams as a whole (as compared to women's teams) complies with Title IX; (6) whether Plaintiffs are entitled to injunctive relief requiring Defendant to create more varsity opportunities for male students at FIT. The evidence required to answer these queries will be common to all members of the class.

Rule 23(a)(2) does not require that *all* questions of fact and law be common. *Cox*, 784 F.2d at 1557. The commonality test is sometimes described as being "qualitative rather than quantitative." *Winston v. Jefferson Cty.*, Civil Action No. 2:05-CV-0497-RDP, 2006 U.S. Dist. LEXIS 101019, at *34-35 (N.D. Ala. June 26, 2006) (citing 1 Newberg § 3.10, at 3-50; *but see SINGER v. AT&T Corp.*, 185 F.R.D. 681, 687 (S.D. Fla. 1998) (holding that Rule 23(a)(2) does not set forth any qualitative or quantitative requirement) (citing 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1763 at p.198 (1986)). Here, the Plaintiffs have multiple

---

[19] *Title IX of the Education Amendments of 1972*; *A Policy Interpretation: Title IX and Intercollegiate Athletics*, 44 Fed. Reg. 71413-71423 (Dec. 11, 1979) ("Policy Interpretation").

questions of fact and law—that are both qualitative (critical determinations) and quantitative (a significant number of issues, including mathematical determinations)—that are common to the entire class.

### 3. Typicality: Student Athletes Have Suffered the Same Injury and Have the Same Interest in its Remedy

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." While there may be some overlap[20] with the commonality requirement, this examines whether the class representative possesses the "same interest and suffer[s] the same injury as the class members." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Even if there are factual differences, however, typicality is met where there is a "strong similarity of legal theories." *Id*. (citation omitted). These Student Athletes have the same legal theories as the class members: that FIT's athletic program violates Title IX's three requirements. Amended Complaint [DE#72]. FIT has described that these decisions were made on a program-wide basis. Response, [DE#37, Ex., ¶¶9-12, 15-23]. FIT's defenses have also been applicable to all males at FIT (i.e., whether eSports could

---

[20] The Supreme Court has described how "the commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457 U.S. at 158 n. 13. One way to differentiate is that commonality is generally describing "group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff[s] in relation to the class." *Prado-Steiman,* 221 F.3d at 1279 (11th Cir. 2000) (citation omitted). These both serve as guideposts for whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*.

count and whether online enrollment counts in the denominator of the participation gap analysis).

Typicality is also established if the "claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). The Student Athletes have alleged that Florida Tech has a pattern and practice of failing to provide equal athletic opportunities in proportion to male student enrollment, as well as the failure to provide equal financial aid, Motion [DE#28, Ex.2, pp.9-24, 31-33], and therefore similarly meet the typicality requirement. *See Biediger*, 2010 U.S. Dist. LEXIS 50044, at *23 (noting that the requirements of commonality and typicality were essentially built into the class definition where class member had to be a female student who has been or will be harmed by the university's gender discrimination). The claims of the Student Plaintiffs have more than a "sufficient nexus" to class members' claims, similar to the challenge to Disney's policy of banning Segways®. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216-17 (11th Cir. 2012) (upholding class certification where issues arose from same policy and liability pursuant to Title III). In the same way, the Student Athletes challenge the policies of FIT's athletic department under Title IX.

These claims are not just typical, they are essentially identical. *Ault*, 692 F.3d at 1216. The named Student Plaintiffs' claims are the same as that of the class: (1)

they are denied or imminently will be denied an equal opportunity to participate in varsity intercollegiate athletics at FIT; (2) they are denied or imminently will be denied an equal allocation of athletics financial assistance; and (3) they are denied or imminently will be denied an equal allocation of the treatment and benefits provided to varsity athletes at FIT. The named Student Plaintiffs and all members of the proposed class are subject to or soon will be subjected to and harmed by the same systemic, ongoing sex discrimination in Florida Tech's athletics department. All have Title IX claims based upon the same legal theories and all seek and will benefit from injunctive relief.

### 4. Adequacy: Plaintiffs and their Representatives will Fairly and Adequately Protect the Interests of the Class

The final requirement of Rule 23(a)(4)—adequacy—applies to both plaintiff and counsel and is intended to protect the legal rights of absent class members. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). In addition, a purpose of this inquiry is to review any potential conflicts of interest between named plaintiffs and the class. *Id*.

### A. *Plaintiffs Do Not Have Substantial Conflicts and Will Continue to Vigorously Prosecute the Action*

Plaintiffs' interest in this action is representative of those of the class and they will adequately represent the class. All Student Athletes and class members share an interest in expanding opportunities for male participation in varsity sports at FIT. The adequacy of the class representatives has two separate inquiries: "(1) whether

any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the class action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189-90 (11th Cir. 2003). Minor conflicts will not defeat class certification; the conflict must be "a 'fundamental' one going to the specific issues in controversy." *Id.* (citing, *inter alia*, *Newberg on Class Actions*, § 3.26 at 3-143 to 144 (3d ed. 1992)). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* Here, none of the Plaintiffs, or class members, benefitted by FIT's failure to comply with Title IX. *Cf. Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) (finding a conflict where some of the cattle producers claimed to have been harmed by contracts and agreements that others had benefitted from). The Student Athletes have the same economic interests and objectives. The entire athletics program will be reviewed for compliance and all male students have an interest in confirming that scholarships are provided in a non-discriminatory way.[21]

The interests are generally shared by these class representatives with the class, even if potentially "differently weighed." *Cohen*, 16 F.4th at 950. There is no actual

---

[21] There has been a recent split in Title IX athletics litigation regarding the potential of compliance potentially elevating one sport over another. *See Cohen v. Brown Univ.*, 16 F.4th 935, 949-51 (1st Cir. 2021) (reviewing decision by several courts sparked by the Second Circuit's decision in *Boucher v. Syracuse University*, 164 F.3d 113 (2d Cir. 1999) requiring subclassing to limit any conflict). As the First Circuit determined, there is no need to subclass here, as there is no intra-class conflict that presents "an actual and substantial risk of skewing available relief in favor of some subset of class members." *Id.* at 950.

conflict, let alone a fundamental one, and Plaintiffs are therefore adequate representatives. *See also Shiyang Huang v. Equifax Inc. (In re Equifax Customer Data Sec. Breach Litig.)*, 999 F.3d 1247, 1276 (11th Cir. 2021) (holding that the fact that some class members had different remedies (state law statutory damages claims), while others did not, was not so "fundamental" as going to the specific issues in controversy). Plaintiffs also seek the same relief here: declaratory and injunctive relief requiring FIT to comply with Title IX. These Student Athletes will also continue to vigorously prosecute this action. They have already sought and obtained a preliminary injunction, protecting other men's varsity teams as well as their own (Doc. 61), and will continue to so litigate.

   *B.  Counsel Have Significant Experience in Class Actions and Title IX*

  The undersigned counsel are competent to handle the class claims in this action. They have demonstrated their competence in this case and their willingness to vigorously pursue the class claims by prevailing on their motion for preliminary injunction. Attorney Arthur Schofield has practiced for more than 30 years in the employment law field, and hired Co-Counsel Attorneys Larew and Diallo, who have litigated class actions for more than a decade. *See* Declarations of Larew and Diallo in Support of Class Certification, filed contemporaneously herewith. Attorney Larew has litigated in the civil rights arena for decades, and Attorneys Larew and Diallo have litigated several Title IX cases in federal courts throughout the country over the past several years. *Id*.

### E.  The Proposed Class Satisfies Rule 23(b)(2)

This action falls squarely under Rule 23(b)(2), which permits class action status where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). This Rule was "intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981); *see also* 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1776, p. 495 (1984 & Supp. 1994).

Certification of Title IX cases similar to the class Plaintiffs seek, albeit for women, have been granted under Rule 23(b)(2). *See Cohen*, 991 F.2d at 893 (certifying a class of "all present and future Brown University women students and potential students who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics").[22]

---

[22] *See also Biediger, supra*; *Portz, supra*; *Haffer*, 678 F. Supp. at 521 (certifying class of "[a]ll current women students at Temple University who participate, or who are or have been deterred from participating because of sex discrimination in Temple's intercollegiate athletic[s] program"); *Favia*, 7 F.3d at 335-36 (certifying class of "all present and future women students at I.U.P. who participate, seek to participate, or are deterred from participating in intercollegiate athletics at the University"); *Paton*, 275 F.3d at 1277 (affirming certification of class of all "present and future female students enrolled … who participate as athletes in intercollegiate athletics"); *Cmty. For Equity*, 192 F.R.D. at 570 (certifying class of "all present and future female students participating in interscholastic athletics because of Defendants' discriminatory conduct and who are adversely affected by that conduct"); *Ridgeway*, 633 F. Supp. at 1567 (certifying class of all "female students enrolled . . . as of the date of filing of the complaint in this action and all such female students who may enroll in said schools in the future"), *aff'd* 858 F.2d 579 (9th Cir. 1988); *Leffel*, 444 F. Supp. at 1119 (certifying class of "[a]ll female public high school students in the state of Wisconsin who

22

Plaintiffs' request for declaratory relief also corresponds to the injunctive relief request and they are not seeking money damages. *Cf. AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1179-80 (11th Cir. 2019) (finding that injunctive relief was retrospective only, and main relief sought was monetary, not declaratory or injunctive). Plaintiffs are seeking relief from current, continued, and future harm, including in Florida Tech's failure to provide equal athletics financial aid to its male students.[23] Certification under Rule 23(b)(2) is "especially appropriate where, as here, the claims of the members of the class may become moot as the case progresses." *Johnson v. Opelousas*, 658 F.2d 1065, 1070 (5th Cir. 1981)[24]; *see also Beasley,* 3 F. Supp. 2d at 1344. While some of the named Plaintiffs have recently graduated, they retain years of eligibility to participate if they decide to pursue Master's programs at FIT; moreover, the rowers are still in their competitive season.[25] Rule 23(b)(2)'s advisory committee notes describe that the Rule is satisfied "even if the action or inaction has taken effect or is threatened only as to one or a few members of the class, provided it is based on

---

desire an opportunity equal to that afforded to all male public high school students in the state of Wisconsin . . .."). As described above, Plaintiffs allegations of systemic policies and practices by Florida Tech that violate their civil rights are readily suited to class treatment under Rule 23(b)(2).
[23] This is best described as a lost opportunity to compete for scholarships or aid on an equal basis. *See Fisk v. Bd. of Trs. of the Cal. State Univ.*, No. 22-CV-173 TWR (MSB), 2023 U.S. Dist. LEXIS 64620, at *21, *27-30 (S.D. Cal. Apr. 12, 2023) (reviewing standing arguments regarding the same).
[24] This case was handed down after October 1, 1981, and is therefore only persuasive, and not precedential, authority.
[25] *See* Exs "D" and "E".

grounds which have general application to the class."[26] Thus, even if only the named plaintiffs or even if only some of FIT's male athletes were subjected to Defendant's sex discrimination, this action would satisfy the requirements of Rule 23(b)(2) because FIT's discriminatory policies and actions are generally applicable to all members of the proposed class. Because Defendant has acted in a discriminatory manner with respect to all class members, and because the named plaintiffs seek declaratory and injunctive relief to remedy that discrimination, the proposed class is certifiable under Rule 23(b)(2).

### F.  Class Counsel Should be Certified Pursuant to Rule 23(g)

In determining whether to appoint class counsel, the Court considers:

(i)    the work counsel has done in identifying or investigating potential claims in the action;

(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)  counsel's knowledge of the applicable law; and

(iv)   the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A). Plaintiffs' counsel have investigated this case since the fall of last year, have significant experience in complex litigation and class actions, are very familiar with Title IX law, and have committed and will continue to commit significant resources. *See* Schofield Dec., Diallo Dec., and Larew Dec., Exs. "F"-"H". Plaintiffs therefore respectfully request that the Court appoint Arthur T. Schofield, P.A. and Larew Law Office as class counsel.

### IV.   CONCLUSION

---

[26] Advisory Committee Notes, 39 F.R.D. 69, 102 (1966)

**WHEREFORE**, based on the foregoing, Plaintiffs move this Court for entry

of an Order:

1.  Certifying claims one, two, and three of this litigation as a class action pursuant to Fed. R. Civ. P 23(a) and 23(b)(2) on behalf of a class defined as follows:

    All present, prospective, and future male students at FIT who are harmed by and want to end FIT's sex discrimination in: (a) the allocation of athletics participation opportunities; (b) the allocation of athletics financial assistance; (c) the allocation of benefits provided to varsity athletes; and all males who are deterred from enrolling at FIT because of the sex discrimination in its athletics program.

2.  Appointing the undersigned counsel as class counsel, pursuant to Fed. R. Civ. P. 23(g);
3.  Appointing the named Plaintiffs as representatives of the class; and
4.  Granting such other relief as the Court deems just.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of June, 2023, the foregoing

document was filed with the Court's CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

/s/Arthur Schofield, Esq.  
ARTHUR T. SCHOFIELD, P.A.  
330 Clematis Street, Suite 207  
West Palm Beach, FL 33401  
(561) 655-4211  
Fla. Bar No. 984434  
aschofield@flalabor.com

James C. Larew, Esq.  
Claire M. Diallo, Esq.  
LAREW LAW OFFICE  
504 E. Bloomington Street  
Iowa City, IA 52245  
(319) 337-7079  
James.Larew@LarewLawOffice.com  
Claire.Diallo@LarewLawOffice.com

ATTORNEYS FOR PLAINTIFF