UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No. 6:22-CV-01950-CEM-EJK

JOSHUA NAVARRO, et al., and on
behalf of similarly situated individuals,

    Plaintiffs,
v.

FLORIDA INSTITUTE OF TECHNOLOGY,
INC., a Florida corporation,

    Defendant.
_____/

**JOINT MOTION AND MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Joshua Navarro, Benjamin Komita, Jaden Krekow, Kyle Stewart, Mason Yaskovic, Thomas Francis, David Adler, Reese Van Putten, Brycen Haner, Ryan Zerneke, and Erik Laari, ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, AND Defendant Florida Institute of Technology, Inc. ("Defendant" or "Florida Tech"), hereby move this Court for Preliminary Approval of a proposed class action settlement. In support thereof, the parties rely upon this Memorandum in Support of the Joint Motion for Preliminary Approval of Class Action Settlement; the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit 1**; the Declaration of Arthur Schofield in Support of Preliminary Approval

("Schofield Declaration") attached as **Exhibit 2**; a Proposed Order Granting Preliminary Approval to the Class Action Settlement attached as **Exhibit 3**; the proposed Notice of Proposed Settlement to Class Members attached as **Exhibit 4**; and the records, pleadings, and papers filed in this action and such other evidence or argument that may be presented to the Court.

## I.   INTRODUCTION

Plaintiffs and the proposed Settlement Class have reached a class action settlement with Defendant, including a three-year injunction, to resolve claims arising from the allegations concerning Florida Tech's alleged violation of Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 *et seq*.) ("Title IX") as set forth in the Plaintiffs' Amended Complaint. Dkt. 87. *See* Settlement Agreement, **Exhibit 1**; *see also* Schofield Decl., at ¶¶ 14-16, **Exhibit 2**.

The settlement provides significant relief and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). The Court should, therefore, preliminarily approve the settlement, direct that notice be sent to all Class Members in the reasonable manner outlined below and set deadlines for briefing on the Joint Motion for Final Approval and Plaintiffs' motion for attorneys' fees, and expenses, and set a Final Approval Hearing date.

## II.  BACKGROUND

### A. Procedural History

This is a class action brought by Plaintiffs on behalf of themselves and class of "[a]ll present and future male students at the Florida Institute of Technology, Inc. who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation student financial aid to varsity athletes."

This case arises from Florida Tech's realignment of collegiate athletic activities in 2022. Specifically, on June 28, 2022, Florida Tech announced that it would be terminating its intercollegiate men's rowing, cross-country, and golf programs for the next upcoming school year. (Doc. 71; Amended. Complaint ¶¶ 29-30.

In response, on October 24, 2022, Plaintiffs filed their four-count class action lawsuit styled *Navarro, et al. v. Florida Institute of Technology, Inc.*, alleging violations of Title IX, including for equal participation (Count I), equal treatment (Count II), equal scholarship activities (Count III), and for an injunctive relief (Count IV). Plaintiffs re-asserted these Counts in their Amended Complaint, which was filed on April 17, 2023. (Doc. 71).

On December 19, 2022, Plaintiffs filed their Motion For Preliminary Injunction (Doc. 28).  The Court held an evidentiary hearing on February 1, 2023 (Doc. 57), and issued its Order granting the motion for preliminary injunction on February 17, 2023.  (Doc. 61).

On July 13, 2023, the parties filed their Joint Motion to Certify Class (Doc. 83), which was conditionally granted by the Magistrate Judge's Report and Recommendation (Doc. 84), and was subsequently adopted in the Court's Order dated September 13, 2023 (Doc. 86).  The Court's Order adopting the Report and Recommendation also named attorneys Arthur T. Schofield, James C. Larew, and Claire M. Diallo as class counsel.

**B. Negotiations and Settlement**

This settlement is the result of months of arms'-length negotiation and hard bargaining.  Before entering into this Settlement Agreement, the parties engaged in mediation in early May, 2023, which did not result in a final resolution of the case.  The parties continued negotiations throughout the summer of 2023 and, on September 14, 2023, arrived at a formal written settlement agreement.  The settlement agreement was fully executed on September 24, 2023, and is attached as **Exhibit 1**.

During the four and a half months of negotiations, the parties had the opportunity to exchange substantive information—including written and document

discovery—regarding the underlying claims and defenses in the case. Both Plaintiffs and Defendant were able to evaluate the risks and costs of continued litigation. The parties' Joint Motion to Certify Class arose directly from these negotiations, and reflects the parties' mutual desire to preserve resources to better serve the ends of the class members and all student varsity athletes at Florida Tech.

This settlement, if approved, will resolve all claims raised in the Amended Complaint.

### C. Summary of Settlement Terms

The Settlement Agreement defines the Class as follows:

> **All present and future male students at the Florida Institute of Technology, Inc., who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes, in compliance with the requirements of 20 U.S.C. § 1681, et seq. (Title IX).**

*See* Settlement Agreement, Settlement Class Definition.[1]

Each of the named Plaintiffs are appointed as class representatives, and Attorneys Schofield, Larew, and Diallo are named as class counsel. *See* Settlement Agreement ¶¶ 3-4. It is estimated that the Class is comprised of approximately 243

---

[1] The Class Definition approved by the parties in the Settlement Agreement is substantively identical to the definition previously approved by the Court, with the only distinction being the addition of "Title IX" at the end. (Doc. 86). Of course, the Parties agree that the Court's Order governs at this stage, and updated the same in the Notice of Proposed Settlement of Class Action.

male student varsity athletes currently enrolled at Florida Tech, in addition to the unknown number of future student varsity athletes who will benefit from this settlement.

### 1. Settlement Benefits

The Settlement will provide broad relief to the Class. First, the current preliminary injunction will be converted into a Final Injunction for a duration of three years from the first day of academic year the 2023/2024 academic year. Settlement Agreement ¶ 5(a).

Second, the terms and conditions of the Settlement Agreement shall remain in effect for a period of five (5) years from the first day of the 2023/2024 academic year and shall expire on the last day of the 2027/2028 academic year. Settlement Agreement ¶ 5(b).

Third, throughout the five-year duration of this Settlement Agreement, Florida Tech will preserve and continue the existence of the men's rowing and men's cross-country teams, and will provide each team with full funding, staffing, and other benefits commensurate with their status as varsity-level intercollegiate teams, as required by the Court's Order granting Plaintiffs' Motion for Preliminary Injunction. The Parties understand that while the men's rowing team is presently almost half its previous size, it is their collective aspiration to increase the team size, to have

multiple competitive boats, and an operating budget commensurate with the expanding needs of the team. Settlement Agreement ¶ 5(c).

Fourth, Florida Tech will not consider, count, or include students participating in E-Sports for any purpose in its Title IX Athletics Requirement Compliance Plan, unless and until such time that E-Sports are recognized as a sport, or emerging sport, by the NCAA, by an appropriate court of competent jurisdiction, or by the Department of Education. In addition, Florida Tech will not consider, count, or include students enrolled solely in Florida Tech Online (who are not included in any EADA reports) for any purpose in its Title IX Athletics Requirement Compliance Plan. Settlement Agreement ¶ 5(d).

Fifth, the Parties agree to the appointment of a mutually agreed neutral, subject to the Court's approval ("Neutral"), whose expenses and compensation shall be capped at $25,000 for the first year, not to exceed an additional $25,000 for the remaining two years of the engagement, and shall borne solely by Florida Tech. Settlement Agreement ¶ 5(e). The Neutral's duties, as set forth in more detail in the Settlement Agreement, will include the following:

- Review Florida Tech's current plan for compliance with Title IX's requirements as set forth in: 34 C.F.R. § 106.41(c)(1); and athletic financial assistance (34 C.F.R.§ 106.37(c); 106.41(c)(2-10)); Title IX of the Education Amendments of 1972; A Policy Interpretation: Title IX and

Intercollegiate Athletics, 44 Fed. Reg. 71413-71423 (Dec. 11, 1979) ("Policy Interpretations") (collectively "Title IX Athletics Requirements") Settlement Agreement ¶ 5(e)(i);

- Prepare an initial assessment of Florida Tech's current compliance with the Title IX Athletics Requirements;

- Provide an Annual Report to the Court of the status of Florida Tech's compliance with the Title IX Athletics Requirements, as defined above. Settlement Agreement ¶ 5(e)(iii)(B);

- Provide opportunities for the parties to comment on the Neutral's draft reports. Settlement Agreement ¶ 5(e)(iii)(A)-(C); and

- The Parties agree that the Neutral must agree to Florida Tech's Title IX Athletics Compliance Plan unless he/she can demonstrate to the Court through the Annual Report that the Plan would fail to bring the program into compliance with Title IX's Athletic Requirements. The Parties further agree that the Neutral is free to provide his/her comments and alternative recommendations regarding Florida Tech's compliance in the Annual Reports, notwithstanding Florida Tech's compliance under this paragraph. Settlement Agreement ¶ 5(e)(iii)(C).

    2.     **Scope of the Release**

In exchange for consideration above, Class Members agree to fully and finally release Florida Tech from those claims arising from or relating to the claims set forth in the Amended Complaint that were or could have been brought in this lawsuit, arising from the beginning of time to the effective date of the settlement, and shall be included within the general mutual release to be executed as a condition of this settlement.  Settlement Agreement, ¶ 2.

### 3. The Notice and Administration Plans

Under the Settlement Agreement, and pursuant to Fed. R. Civ. P. 23(c)(2)(A), 23(e), and 23(h), Florida Tech will provide notice acceptable to the Plaintiffs and to the Court of the proposed class action settlement, the date and time for the final approval hearing, and application for attorneys' fees to all current, presently-enrolled male student varsity athletes.  Settlement Agreement ¶ 8. The proposed Notice via email to current varsity student athletes, as well as a posting on Florida Tech's website, complies with the requirements of Fed. R. Civ. P. 23(e)(1). *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012) (reviewing notice provisions of Rule 23 to protect due process and affirming district court's discretion to provide appropriate notice under Rule 23(b)(2) class actions, though not specifically required by the Rule). A true and accurate copy of the proposed Notice is attached as **Exhibit 4**.

### 4. Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs will also separately seek an award of attorneys' fees and costs not to exceed Three Hundred and Fifty Thousand Dollars ($350,000.00), which Florida Tech agrees it will not oppose.  Settlement Agreement ¶ 6.

Further, Class Counsel, to the extent required to enforce this Agreement or demonstrate non-compliance with Title IX through briefing to the Court in the future, reserve the right to apply to the Court for the payment of additional fees and costs for the same.  Notwithstanding the above, any order modifying or reversing any attorneys' fees award shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.  *Id.*

### III.   LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement in a class action.  This can involve "a two-step process: preliminary approval and a subsequent fairness hearing."  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, *2 (S.D. Fla. 2010) (citing *Manual for Complex Litigation*). In this two-step process, the parties submit the proposed settlement to the court for preliminary approval, along with any proposed notice to the class.  *Id.*  Once granted, the second step of the process begins, *i.e.*, notice is given to the class members of a final fairness hearing, at which time class members and the settling parties may be heard with respect to final court approval.  *Id.* at *7.

Under Rule 23(e), approval should be given so long as the settlement is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks omitted). The Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id.*; *accord Manual for Complex Litig.* § 30.41.

The Court may rely on the judgment of experienced class counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (citation omitted). Where the proposed settlement is the result of serious, arms'-length negotiations between the parties, has no obvious deficiencies, falls within the range of possible approval, achieves favorable outcomes for plaintiffs and the class, and does not grant preferential treatment to Plaintiffs or other segments of the class, courts generally grant approval. *Exum v. Nat'l Tire and Battery*, 2020 WL 1670997, *7 (S.D. Fla. April 6, 2020).

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. Sept, 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial

18918178v1                                                                    11

settlement of class action lawsuits." *In re Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

In cases advancing statutory rights, such as Title IX, "the policy favoring settlement is even stronger in view of the emphasis placed upon voluntary conciliation by the Act itself." *Cotton*, 559 F.2d at 1331 (citation omitted). "[A] just result is often no more than an arbitrary point between competing notions of reasonableness." *Bennett*, 737 F.2d at 987. "As a result, the question is not 'whether the proposed [settlement] is the best possible deal,' but whether it is 'at a minimum, fair, adequate and reasonable.'" *Allen v. Alabama State Bd. Of Educ.*, 190 F.R.D. 602, 608 (M.D. Ala. 2000) (citation omitted). The following factors are reviewed in considering whether the settlement meets the fair, adequate and reasonable test:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (citations omitted).[2]

Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member. *Barabin v. Aramark Corp.*, 210 F.R.D. 152, 157 (E.D. Pa.

---

[2] These factors, sometimes called the "Bennett factors," are reviewed for final approval, but to the extent relevant to preliminary approval, are also referenced below.

18918178v1                                   12

2002). Rather, the purpose of preliminary approval is solely to communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and to authorize the manner and form of dissemination of the notice. *Newberg on Class Actions* at § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that" notice issue and should schedule a final approval hearing) (citation omitted.)

Thus, if a proposed settlement could possibly be approved and it appears to be the product of informed, arm's-length negotiations, it should be approved for purposes of setting the fairness hearing and notifying the class. *See In re NASDAQ Market-Makers Antitrust Liti.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Finally, a district court has broad discretion with respect to the approval of class settlements, and its decision is reviewed for an abuse of discretion. *See e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001).

### IV.   ARGUMENT

**1.   The Proposed Settlement Is the Product of Arms-Length Negotiations between Experienced Professionals.**

"'There is a presumption of good faith in the negotiation process'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citation omitted); *accord Newberg on Class Actions* at § 11.41 ("There is usually an initial

presumption of fairness when a proposed settlement, which was negotiated at arms length by counsel for the class, is presented for court approval.").

Where the parties have negotiated at arms-length, the court should find that the settlement is not the product of collusion. *See, e.g., Ass'n for Disabled Ams., Inc. v. Amoco Oil, Inc.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002). Where, as here, a "case proceeds adversarially, this counsels against a finding of collusion." *Saccoccio*, 297 F.R.D. at 692.

In this case, the settlement was the result of intensive, arm's-length negotiations between attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. Settlement negotiations in this case took place over the course of several months and involved a mediation session and weeks of follow-up negotiations among all counsel. Schofield Decl., ¶¶ 6-10. Notably, the parties' litigation of Plaintiffs' Motion for Preliminary Injunction alone establishes the adversarial nature of this case, which strongly supports the absence of collusion. No collusion or illegality existed during the settlement process. *Id*. ¶¶ 14-15. The Parties' counsel support the settlement as fair and reasonable, and all certify that it was reached at arms' length. *Id*. The stage at which the settlement was achieved (*Bennett*, 737 F.2d at 986) was therefore after intensive discovery and negotiations, and an initial Preliminary Injunction.

## 2. The Proposed Settlement Falls within the Range of Reasonableness and Warrants Issuance of Notice and a Final Approval Hearing.

At the preliminary approval stage, the Court is required "to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation*, § 21.632 (4th ed. 2014). A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval' or, in other words, there is 'probable cause' to notify the class of the proposed settlement.'" *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895 (S.D. Fla. Ft. Lauderdale Division May 14, 2007) (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994)).

As an initial matter, the proposed settlement goes well beyond the relief granted by this Court in its Order granting Plaintiffs' Motion for Preliminary Injunction. Indeed, conversion of the Preliminary Injunction to a Final Injunction, extension of the Settlement Agreement for a five-year period, and the voluntary appointment of a Neutral were neither part of the Preliminary Injunction nor necessary results of fully contested litigation. It is therefore better than the range of possible recovery even after a trial. *See Bennett*, 737 F.2d at 986. These factors alone provide *prima facie* evidence that the proposed settlement falls well within the range of reasonableness.

Moreover, while Plaintiffs believe that the claims asserted in this Class Action are meritorious and the Class would ultimately prevail at trial, continued litigation

against Defendant poses significant risks that make any recovery for the Class uncertain. The fairness and adequacy of the settlement is underscored by consideration of the obstacles that the Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. *See Amos v. PPF Indus.*, 2015 WL 4881459, at *1 (S.D. Ohio 2015) ("In general, most class action are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at *6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

Despite the risks involved with further litigation, the Settlement Agreement provides outstanding benefits, including reinstatement to varsity status of two of the men's sports that were terminated, and structural injunctive relief to assure compliance with Title IX, which benefits all student varsity athletes.

### 3. The Proposed Settlement Has No Obvious Deficiencies.

There are no grounds to doubt the fairness of the proposed settlement, nor are there any deficiencies that could warrant its rejection, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. *Exum v. Nat'l ire and Battery*, 2020 WL 1670997, * 7 (S.D. Fla. April 6, 2020). *All* other Class

Members—not just the named Plaintiffs—will receive the benefit of full compliance with Title IX Requirements as that term is defined in the Settlement Agreement. Moreover, none of the Class Representatives has requested a service award, which further supports the absence of any type of preference over other class members.

The matter of attorneys' fees and payment of expenses will be determined by the Court. Proposed Class Counsel has agreed to limit their attorneys' fee and costs request to $350,000. It is undisputed that prevailing parties in Title IX litigation are entitled to apply for an award of attorney's fees. *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce . . . [T]itle IX, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). Moreover, as here, the parties can agree to cover fees and expert expenses and costs, above those guaranteed in a successful litigation, if approved by the Court. Settlement Agreement, ¶6.

Counsels' request is notable because it is modest in comparison to other Title IX cases, does not reduce the benefits conferred by the Settlement, and reflects conscious efforts to reduce fees as the parties continued their lengthy negotiations leading to this settlement. *See, e.g., Portz v. St. Cloud State University* 2023 WL 3721665, *5 (D. Minn. May 30, 2023) (awarding $1,780,453 where "the services for which fees are requested reflect hours reasonably expended, and because Plaintiffs engaged in a good faith effort to reduce the fees in alignment with the

Court's previous orders); *Cohen v. Brown University*, Case No. 1:92-cv-00197 (D.R.I. November 8, 2022) (awarding $1,135,000 in attorney's fees for prosecuting breach of joint settlement agreement in long-running Title IX case); *Cruz v. Alhambra School Dist.*, 601 F. Supp.2d 1183 (C.D. Cal. 2009) (awarding $737,408 applying lodestar analysis).

Importantly, here, Class Counsel's fees were not negotiated until after Class Counsel agreed upon Class Members' relief. Schofield Decl. ¶ 11. Because Plaintiffs and Class Counsel will move this Court for an award of costs, fees, expenses at least 14 days before the final fairness hearing, the Court will have the ability to consider these payments before granting final approval.

For the foregoing reasons, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the proposed Class.

## CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. A proposed Order Granting Preliminary Approval of Class Action Settlement is attached as **Exhibit 1** to the Unopposed Motion for Preliminary Approval of Class Action Settlement.

Respectfully submitted,

*/s/Arthur Schofield, Esq.*  
ARTHUR T. SCHOFIELD, P.A.

*/s/James C. Larew, Esq.*  
*/s/Claire M. Diallo, Esq.*  
James C. Larew, Esq.

330 Clematis Street, Suite 207
West Palm Beach, FL 33401
(561) 655-4211
Fla. Bar No. 984434
Aschofield@flalabor.com

ATTORNEYS FOR PLAINTIFFS

/s/ Drew H. Campbell
**BRICKER GRAYDON LLP**
Matthew D. Gurbach (*admitted phv*)
(Ohio Bar No. 0076707)
Kasey Nielsen (*admitted phv*)
(Ohio Bar No. 0101069)
1350 Euclid Avenue, Suite 650
Cleveland, Ohio  44115
t: 216.523.5405
f: 216.523.7071
mgurbach@bricker.com
knielsen@bricker.com

mgurbach@brickergraydon.com
knielsen@brickergraydon.com

Drew Campbell (*admitted phv*)
(Ohio Bar No. 0047197)
Jeffrey Knight (*admitted phv*)
(Ohio Bar No. 0086649)
100 South Third Street
Columbus, Ohio  43215
t. 614.227.2300
f. 614.227.2390
dcampbell@brickergraydon.com
jknight@brickergraydon.com

*Co-Counsel for Florida Institute of Technology, Inc.*

Claire M. Diallo, Esq.
LAREW LAW OFFICE
504 E. Bloomington Street
Iowa City, IA 52245
(319) 337-7079
James.Larew@LarewLawOffice.com
Claire.Diallo@LarewLawOffice.com

/s/Richard L. Barry
**GRAY | ROBINSON, P.A.**
Richard L. Barry  (360650)
Richard E. Mitchell  (168092)
301 East Pine Street, Suite 1400
Orlando, Florida  32802
t: (407) 843-8880
f: (407) 244-5690
richard.barry@gray-robinson.com
rick.mitchell@gray-robinson.com

*Co-Counsel for Florida Institute of Technology, Inc.*

18918178v1

19