# SETTLEMENT AGREEMENT

**Introduction.** This Settlement Agreement, which sets forth the definitive terms to be included in a final class action settlement agreement between the parties, subject only to final Court approval, is made by and between Joshua Navarro, Benjamin Komita, Jaden Krekow, Kyle Stewart, Mason Yaskovic Thomas Francis, David Adler, Reese Van Putten, Brycen Haner, Ryan Zerneke, and Erik Laari, on behalf of themselves and a class of similarly situated individuals, ("Plaintiffs"), one the one hand, and Florida Institute of Technology, ("Florida Tech"), on the other hand. (Collectively the "Parties.")

1. **Settlement Class Definition:** The class shall be defined as follows:

All present and future male students at the Florida Institute of Technology, Inc., who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes, in compliance with the requirements of 20 U.S.C. § 1681, et seq. (Title IX).

2. **Class Claims Included In Settlement.** Pursuant to Fed. R. Civ. P. 23(c)(1)(b), each claim set forth in the Amended Complaint, including those claims arising from or relating to the claims set forth in the Amended Complaint that were or could have been brought, arising from the beginning of time to the effective date of the settlement, shall be included within the general mutual release to be executed as a condition of this settlement.

3. **Appointment of Class Counsel.** The Parties consent to the appointment of Arthur T. Schofield, James C. Larew, and Claire M. Diallo as class counsel, pursuant to Fed. R. Civ. P. 23(g). (Hereinafter "Class Counsel.")

4. **Appointment of Class Representatives.** The Parties consent to the appointment of the following individuals to serve as the class representatives: Joshua Navarro, Benjamin Komita, Jaden Krekow, Kyle Stewart, Mason Yaskovic, Thomas Francis, David Adler, Reese Van Putten, Brycen Haner, Ryan Zerneke, and Erik Laari, on behalf of themselves and a class of similarly situated individuals.

5. **Settlement Benefits**

   a. Injunctive relief: The Parties agree to convert the Court's Preliminary Injunction into a Final Injunction for a duration of three (3) years from the effective date, as set forth in paragraph twenty one (21), below. (The "Injunction Period.") The Court shall retain continuing jurisdiction over this case, as described further below, for the three-year Injunction Period.

   b. Term of Settlement Agreement: The Parties agree that the terms and conditions of this Settlement Agreement shall remain in effect for a period of five (5) years from the first day of the 2023/2024 academic year, and shall expire on the last day of the 2027/2028 academic year.

c. <u>Status of Men's Rowing and Men's Cross-Country Teams:</u> The Parties agree that for the five-year duration of this Settlement Agreement, Florida Tech will preserve and continue the existence of the men's rowing and men's cross-country teams, and will provide each team with full funding, staffing, and other benefits commensurate with their status as varsity-level intercollegiate teams, as required by the Court's Order granting Plaintiffs' Motion for Preliminary Injunction, which will be converted to a Final Injunction in accordance with the terms of this Settlement Agreement. The Parties understand that while the men's rowing team is presently almost half its previous size, it is their collective aspiration to increase the team size, to have multiple competitive boats, and an operating budget commensurate with the expanding needs of the team.

d. <u>E-Sports and Online Student Enrollment:</u> Florida Tech agrees that it will not consider, count, or include students participating in E-Sports for any purpose in its Title IX Athletics Requirement Compliance Plan, unless and until such time that esports are recognized as a sport, or emerging sport, by the NCAA, an appropriate court of competent jurisdiction, or the Department of Education. In addition, Florida Tech agrees that it will not consider, count, or include students enrolled solely in Florida Tech Online (who are not included in any EADA reports) for any purpose in its Title IX Athletics Requirement Compliance Plan.

e. <u>Appointment of a Neutral:</u> The Parties agree to the appointment of a mutually agreed neutral, subject to the Court's approval ("Neutral"), whose expenses and compensation shall be capped at $25,000 for the first year, not to exceed an additional $25,000 for the remaining two years of the engagement, and shall borne solely by Florida Tech, and whose duties will consist of the following:

   i. Review Florida Tech's current plan for compliance with Title IX's requirements as set forth in: 34 C.F.R. § 106.41(c)(1); and athletic financial assistance (34 C.F.R.§ 106.37(c); 106.41(c)(2-10)); Title IX of the Education Amendments of 1972; A Policy Interpretation: Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71413-71423 (Dec. 11, 1979) ("Policy Interpretations") (collectively "Title IX Athletics Requirements").

   ii. Neutral's engagement shall not involve aspects of University Title IX compliance outside of the provision of Title IX Athletics Requirements.

   iii. Prepare the following reports assessing compliance and recommendations to achieve compliance if and as necessary.

      A. <u>Initial Assessment:</u> Within 90 days of the Neutral's appointment, Neutral shall prepare a draft preliminary assessment of Florida Tech's current compliance with the Title IX Athletics Requirements. In preparing the draft preliminary assessment, the Neutral may spend up to three days at Florida Tech for the purpose of meeting with coaches, student athletes, and/or reviewing documents, at the discretion of the Neutral. The Parties shall be

      permitted thirty (30) days to provide comments, if any, to the Neutral on the draft preliminary assessment. The Neutral shall consider, but is not bound, by the Parties' respective comments. Within 30 days thereafter, the Neutral shall provide the final Preliminary Assessment to the Parties.

B. <u>Annual Reporting:</u> Before the end of each year of the Neutral's three-year appointment, the Neutral shall provide an Annual Report to the Court of the status of Florida Tech's compliance with the Title IX Athletics Requirements, as defined above. The Neutral shall provide a draft of the annual report to the Parties, who shall be permitted a 30-day comment period. The Neutral shall consider, but is not bound, by the Parties' respective comments. Within 30 days thereafter, the Neutral shall provide the final Annual Report to the Court, with copies to the Parties.

C. <u>Authority:</u> The Parties agree that the Neutral must agree to Florida Tech's Title IX Athletics Compliance Plan unless he/she can demonstrate to the Court through the Annual Report that the Plan would fail to bring the program into compliance with Title IX's Athletic Requirements. The Parties further agree that the Neutral is free to provide his/her comments and alternative recommendations regarding Florida Tech's compliance in the Annual Reports, notwithstanding Florida Tech's compliance under this paragraph.

6. **Attorney's Fees and Costs:** Florida Tech agrees not to oppose an application by Class Counsel for an award of attorneys' fees and litigation costs (including reasonable expert fees incurred in the prosecution of the lawsuit) not to exceed $350,000. Class Counsels' attorneys' fee award shall be paid by Florida Tech within sixty (60) days of Court approval of Class Counsels' motion for the award of costs and fees. Class Counsel, in their discretion, may allocate and distribute any amounts of attorneys' fees, costs, and expenses awarded by the Court among Class Counsel. Class Counsel, to the extent required to enforce this Agreement or demonstrate non-compliance with Title IX through briefing to the Court in the future reserve the right to apply to the Court for the payment of additional fees and costs for the same. Notwithstanding the above, any order modifying or reversing any attorneys' fees award shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

7. **Termination of the Settlement Agreement:** Any Party shall have the option to withdraw from this settlement, and to render it null and void, if any of the following occurs:

a. Any objection to the Agreement is sustained and such objection results in changes to the Agreement that withdrawing party deems in good faith to be material (*e.g.*, because it significantly increases the cost of the Settlement, delays approval and/or implementation of the Settlement, or deprives the withdrawing Party of a benefit of the Settlement).

    b. Any attorney general or federal or state governmental entity is allowed to intervene and such intervention results in changes to the Agreement that the withdrawing party in good faith deems to be material (*e.g.*, because it significantly increases the cost of the Settlement, delays approval and/or implementation of the Settlement, or deprives the withdrawing Party of a benefit of the Settlement).

    c. Either the Preliminary Approval Order or Final Approval Order is not entered without modification, any such modification required by the Court for approval is not agreed to by each Party, and the withdrawing Party in good faith deems such modification to be material (*e.g.*, because it significantly increases the cost of the Settlement, delays approval and/or implementation of the Settlement, or deprives the withdrawing Party of a benefit of the Settlement).

    d. Entry of the Final Approval Order is reversed or substantially modified by an appellate court, except that a reversal resulting in a reduction of the award of attorney's fees, costs, and/or expenses shall not be a basis for withdrawal.

8. **Settlement Administration Process:** Pursuant to Fed. R. Civ. P. 23(c)(2)(A), 23(e), and 23(h), Florida Tech shall provide notice acceptable to the Plaintiffs and to the Court of the proposed class action settlement, the date and time for the final approval hearing, and application for attorneys' fees to all current, presently-enrolled student athletes. The Parties agree that the terms of the Settlement are fair, reasonable and adequate; that Class Representatives and Class Counsel have adequately represented the class; and that this Settlement was negotiated at arm's length.

9. **Release:** The relief stated above will be provided to Class Members as consideration for a general release of Defendant for all claims and causes of action pleaded or that could have been pleaded that are related to the Lawsuit, as set forth in paragraph 2, above.

10. **No Admission.** This Agreement constitutes a settlement only and may not be used for any purpose not expressly provided for herein. Neither the making of this Agreement nor any of the provisions herein shall constitute or be considered an admission of wrongdoing by either Party.

11. **Voluntary Agreement/Assistance of Counsel.** Each Party represents that it has been represented and advised in connection with the negotiation of this document by counsel of its choice. The Parties further represent that each has had an opportunity to read, understand, and seek legal advice with respect to each term and condition of this Agreement, and that each fully understands each of the terms and conditions contained herein. No Party is relying on the legal advice of any other Party.

12. **Entire Agreement.** This Agreement comprises the entire and final agreement between the Parties concerning the subject matter set forth herein, and supersedes all prior and/or contemporaneous oral or written agreements, representations, or understandings of any nature, including, without limitation, drafts or other writings or proposed settlement agreements. It is further understood and agreed that this Agreement, including this Paragraph, shall not be varied, modified, or contradicted by evidence of prior, contemporaneous, or subsequent agreements or

conduct of any nature, absent an express writing, signed by each of the Parties. There are no unwritten agreements or understandings between the Parties related to the subject matter of this Agreement, as set forth herein.

13. **Severability.** If any provision of this Agreement or application thereof to any person or entity is held invalid, such invalidity shall not affect other provisions or applications of this Agreement, and to this end the provisions of this Agreement are severable.

14. **Contract Matters.** It is hereby expressly understood and agreed that the terms and releases contained herein are contractual and not merely recitals.

15. **Headings.** All section and Paragraph headings in this Agreement are included for convenience of reference only and do not constitute a part of this Agreement.

16. **Waiver.** Any waiver by any Party of any breach or violation of any term or condition of this Agreement shall not operate as a waiver of any other breach or violation of such term and condition or any other term or condition nor shall any failure to enforce any provision hereof operate as a waiver of this provision or of any other provision hereof or constitute or be deemed a waiver or release of any rights, either at law, in equity, or otherwise.

17. **Successors and Assigns.** This Agreement shall be binding upon, and shall inure to the benefit of, the successors, assigns, and other legal representatives of the Parties, whether now or hereafter existing. The Parties covenant and agree that by entering into this Agreement, they do not intend, nor shall this Agreement be construed, to create third party beneficiary status, either express or implied, upon any person or entity other than the signatories Class Representatives and the Class Members.

18. **Choice of Law and Venue.** This Agreement shall be governed by the laws of the State of Florida without reference to its choice of law provisions. Any and all disputes arising under or relating to this Agreement shall be brought by civil action commenced in the United States District Court for the Middle District of Florida, before Judge Carlos E. Mendoza, who shall have and retain continuing and exclusive jurisdiction over this matter. The Parties irrevocably waive any defense based on lack of venue, personal jurisdiction, forum non conveniens, transfer, priority doctrines, and any defense(s) of similar type or import. The Parties irrevocably agree to waive their respective rights to have a jury decide any dispute arising under or relating to this Settlement Agreement, and that any and all such disputes shall be adjudicated solely by the Court.

19. **Preparation and Interpretation of Settlement Agreement.** The Parties acknowledge that this Agreement was the result of negotiation and joint discussion among them. The Parties further acknowledge that this Agreement shall be deemed to have been jointly prepared and that neither Party is to be deemed the drafter or preparer of this Agreement. Accordingly, to the extent there should later prove to be ambiguities in the Agreement, the Parties agree that such ambiguity shall not be construed in favor of or against either Party.

20. **Counterparts.** It is understood and agreed that this Agreement may be executed in any number of counterparts, each of which is deemed to be an original, all of which when taken together shall constitute but one agreement.

21. **Effective Date.** This Agreement shall be deemed to become effective upon the first day of the 2023/2024 academic year. (The "Effective Date.")

Florida Institute of Technology

By: _____

Its: _____

Joshua Navarro
_____
Joshua Navarro

Benjamin Komita
_____
Benjamin Komita

Jaden Krekow
_____
Jaden Krekow

*Kyle Stewart*
Kyle Stewart (Sep 19, 2023 16:39 EDT)
_____
Kyle Stewart

Mason Yaskovic
_____
Mason Yaskovic

Thomas Francis
_____
Thomas Francis

David Adler
_____
David Adler

Reese Van Putten
_____
Reese Van Putten

Brycen Haner
_____
Brycen Haner

*Brycen Haner*
Brycen Haner (Sep 20, 2023 17:20 EDT)
_____
Ryan Zerneke

Erik Laari
_____
Erik Laari

6

Signature: _Jaden Krekow_
Jaden Krekow (Sep 19, 2023 16:22 EDT)
Email: jkrekowbusiness@gmail.com

Signature: _Ben Komita_
Email: benkomita@gmail.com

Signature: _Joshua Navarro_
Email: navarrojoshua711@gmail.com

Signature: _____
Thomas Francis (Sep 20, 2023 09:35 EDT)
Email: tjfrancis160@gmail.com

Signature: _____
Mason Yaskovic (Sep 20, 2023 13:01 EDT)
Email: yaskovicmason@gmail.com

Signature: _David Adler_
David Adler (Sep 20, 2023 13:12 EDT)
Email: davler1298@gmail.com

Signature: _____
Erik Laari (Sep 20, 2023 17:10 EDT)
Email: erik.laari@gmail.com

Signature: _____
Reese Van Putten (Sep 20, 2023 15:14 MDT)
Email: rtylervp@gmail.com

Signature: _____
Ryan Zerneke (Sep 20, 2023 18:49 EDT)
Email: ryanzerneke@gmail.com

# FIT_Navarro_ Final Settlement Agreement

Final Audit Report  2023-09-20

| | |
|---|---|
| Created: | 2023-09-19 |
| By: | Arthur Schofield (aschofield@flalabor.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAqIXAhd-1QrmkKaHyD_bLYjDOZMO_fJUC |

## "FIT_Navarro_ Final Settlement Agreement" History

- Document created by Arthur Schofield (aschofield@flalabor.com)
  2023-09-19 - 6:52:22 PM GMT- IP address: 67.191.8.22

- Document emailed to jkrekowbusiness@gmail.com for signature
  2023-09-19 - 6:56:45 PM GMT

- Email viewed by jkrekowbusiness@gmail.com
  2023-09-19 - 6:56:47 PM GMT- IP address: 66.249.87.107

- Signer jkrekowbusiness@gmail.com entered name at signing as Jaden Krekow
  2023-09-19 - 8:22:00 PM GMT- IP address: 163.118.184.43

- Document e-signed by Jaden Krekow (jkrekowbusiness@gmail.com)
  Signature Date: 2023-09-19 - 8:22:02 PM GMT - Time Source: server- IP address: 163.118.184.43

- Document emailed to Kyle Stewart (kylewwsofficial@gmail.com) for signature
  2023-09-19 - 8:22:04 PM GMT

- Email viewed by Kyle Stewart (kylewwsofficial@gmail.com)
  2023-09-19 - 8:22:06 PM GMT- IP address: 66.249.87.106

- Document e-signed by Kyle Stewart (kylewwsofficial@gmail.com)
  Signature Date: 2023-09-19 - 8:39:29 PM GMT - Time Source: server- IP address: 68.205.8.249

- Document emailed to ben Komita (benkomita@gmail.com) for signature
  2023-09-19 - 8:39:30 PM GMT

- Email viewed by ben Komita (benkomita@gmail.com)
  2023-09-19 - 8:39:38 PM GMT- IP address: 66.249.83.208

- Document e-signed by ben Komita (benkomita@gmail.com)
  Signature Date: 2023-09-19 - 8:43:38 PM GMT - Time Source: server- IP address: 108.176.22.194


Adobe Acrobat Sign

✉ Document emailed to Joshua Navarro (navarrojoshua711@gmail.com) for signature
2023-09-19 - 8:43:39 PM GMT

📄 Email viewed by Joshua Navarro (navarrojoshua711@gmail.com)
2023-09-20 - 1:29:48 PM GMT- IP address: 66.249.83.200

✍ Document e-signed by Joshua Navarro (navarrojoshua711@gmail.com)
Signature Date: 2023-09-20 - 1:30:40 PM GMT - Time Source: server- IP address: 204.111.132.164

✉ Document emailed to tjfrancis160@gmail.com for signature
2023-09-20 - 1:30:43 PM GMT

📄 Email viewed by tjfrancis160@gmail.com
2023-09-20 - 1:34:08 PM GMT- IP address: 74.125.210.71

✍ Signer tjfrancis160@gmail.com entered name at signing as Thomas Francis
2023-09-20 - 1:35:07 PM GMT- IP address: 136.226.52.173

✍ Document e-signed by Thomas Francis (tjfrancis160@gmail.com)
Signature Date: 2023-09-20 - 1:35:09 PM GMT - Time Source: server- IP address: 136.226.52.173

✉ Document emailed to yaskovicmason@gmail.com for signature
2023-09-20 - 1:35:11 PM GMT

📄 Email viewed by yaskovicmason@gmail.com
2023-09-20 - 1:35:13 PM GMT- IP address: 66.249.87.106

✍ Signer yaskovicmason@gmail.com entered name at signing as Mason Yaskovic
2023-09-20 - 5:01:20 PM GMT- IP address: 163.116.135.120

✍ Document e-signed by Mason Yaskovic (yaskovicmason@gmail.com)
Signature Date: 2023-09-20 - 5:01:22 PM GMT - Time Source: server- IP address: 163.116.135.120

✉ Document emailed to davler1298@gmail.com for signature
2023-09-20 - 5:01:24 PM GMT

📄 Email viewed by davler1298@gmail.com
2023-09-20 - 5:01:26 PM GMT- IP address: 66.249.87.107

✍ Signer davler1298@gmail.com entered name at signing as David Adler
2023-09-20 - 5:12:52 PM GMT- IP address: 163.118.219.51

✍ Document e-signed by David Adler (davler1298@gmail.com)
Signature Date: 2023-09-20 - 5:12:54 PM GMT - Time Source: server- IP address: 163.118.219.51

✉ Document emailed to erik.laari@gmail.com for signature
2023-09-20 - 5:12:55 PM GMT



- Email viewed by erik.laari@gmail.com
  2023-09-20 - 5:12:57 PM GMT- IP address: 66.249.87.107

- Signer erik.laari@gmail.com entered name at signing as Erik Laari
  2023-09-20 - 9:10:10 PM GMT- IP address: 163.118.184.38

- Document e-signed by Erik Laari (erik.laari@gmail.com)
  Signature Date: 2023-09-20 - 9:10:12 PM GMT - Time Source: server- IP address: 163.118.184.38

- Document emailed to Reese Van Putten (rtylervp@gmail.com) for signature
  2023-09-20 - 9:10:14 PM GMT

- Email viewed by Reese Van Putten (rtylervp@gmail.com)
  2023-09-20 - 9:10:16 PM GMT- IP address: 66.249.87.106

- Document e-signed by Reese Van Putten (rtylervp@gmail.com)
  Signature Date: 2023-09-20 - 9:14:05 PM GMT - Time Source: server- IP address: 4.31.13.30

- Document emailed to brycenhaner@gmail.com for signature
  2023-09-20 - 9:14:08 PM GMT

- Email viewed by brycenhaner@gmail.com
  2023-09-20 - 9:14:34 PM GMT- IP address: 74.125.210.66

- Signer brycenhaner@gmail.com entered name at signing as Brycen Haner
  2023-09-20 - 9:20:53 PM GMT- IP address: 163.118.219.40

- Document e-signed by Brycen Haner (brycenhaner@gmail.com)
  Signature Date: 2023-09-20 - 9:20:55 PM GMT - Time Source: server- IP address: 163.118.219.40

- Document emailed to ryanzerneke@gmail.com for signature
  2023-09-20 - 9:20:57 PM GMT

- Email viewed by ryanzerneke@gmail.com
  2023-09-20 - 9:20:59 PM GMT- IP address: 66.249.87.106

- Signer ryanzerneke@gmail.com entered name at signing as Ryan Zerneke
  2023-09-20 - 10:49:15 PM GMT- IP address: 163.118.188.189

- Document e-signed by Ryan Zerneke (ryanzerneke@gmail.com)
  Signature Date: 2023-09-20 - 10:49:17 PM GMT - Time Source: server- IP address: 163.118.188.189

- Agreement completed.
  2023-09-20 - 10:49:17 PM GMT

**Adobe Acrobat Sign**