UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSHUA NAVARRO, BENJAMIN KOMITA, JADEN KREKOW, KYLE STEWART, MASON YASKOVIC, THOMAS FRANCIS, BRYCEN HANER, RYAN ZERNEKE, DAVID ADLER, ERIK LAARI, and REESE VAN PUTTEN,

    Plaintiffs,

v.               Case No: 6:22-cv-1950-CEM-EJK

FLORIDA INSTITUTE OF TECHNOLOGY, INC.,

    Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Joint Motion and Memorandum of Law for Preliminary Approval of Class Action Settlement (the "Motion"), filed October 10, 2023. (Doc. 87.) Upon consideration, I respectfully recommend that the Motion be granted.

### I. BACKGROUND

On June 28, 2022, Defendant Florida Institute of Technology, Inc.'s ("FIT") Department of Athletics announced it would be terminating its intercollegiate rowing, cross-country, and golf programs. (Doc. 71 ¶¶ 29, 30.) These cuts resulted in FIT's alleged noncompliance with its Title IX obligations to provide male and female students with the same athletic opportunities and scholarships "in proportion to their

respective full-time student body enrollment percentages." (*Id.* ¶¶ 34–36.) Plaintiffs allege that FIT provided female students with "far more athletic opportunities . . . more scholarship dollars and better treatment" compared to undergraduate male student athletes. (*Id.* ¶ 35.)

On April 17, 2023, Plaintiffs Joshua Navarro, Benjamin Komita, Jaden Krekow, Kyle Steward, Mason Yaskovic, Thomas Francis, David Adler, Reese Van Putten, Brycen Haner, Ryan Zerneke, and Erik Laari, on behalf of similarly situated individuals referred to as "Student Athletes," filed a four-count class action complaint against FIT, alleging violations of Title IX, 20 U.S.C. § 1681 (Counts I, II, III, and IV). (*Id.*) The Complaint alleged that FIT, in violation of Title IX, failed to provide equal opportunity and equal treatment to male undergraduate athletes as compared to the opportunities provided to its female undergraduate athletes. (*See id.*) Plaintiffs are male student athletes that claim to be adversely affected by the actions taken by FIT's Department of Athletics. (*Id.*)

The parties ultimately agreed to resolve the case. To that end, the parties drafted a proposed settlement agreement (the "Settlement Agreement") (Doc. 87-1) and now move for the Court's preliminary approval of the class action Settlement Agreement. (Doc. 87.) The Settlement Agreement will convert the current Preliminary Injunction into a Final Injunction, remain in effect for a five-year period, and preserve and continue the existence of the men's rowing and cross-country teams, providing each team with full funding, staffing, and other benefits. (Doc. 87 at 7.) Further, Defendant will not consider E-sports in its Title IX Athletics Requirement Compliance Plan

unless they are recognized as a sport by the appropriate governing body, and Defendant will not include students enrolled solely through Defendant's online program. (*Id.*) Lastly, the parties agree to the appointment of a Court-approved and mutually agreed-upon neutral to ensure Defendant's current and continued Title IX compliance for the duration of the Settlement Agreement. (*Id.*)

## II.   STANDARD

Court approval of a class action settlement proceeds in two stages. First, the parties present a proposed settlement to the court for "preliminary approval" and ask the court to make a preliminary determination regarding class certification. *See generally* Fed. R. Civ. P. 23. At this preliminary stage, the Court must determine whether it "will likely be able to" 1) certify the class for purposes of judgment on the proposed settlement; and 2) approve the settlement proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). If the Court is satisfied on both inquiries, the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *Id.* After notice to the class, the Court should hold a fairness hearing at which class members may appear to support or object to the proposed hearing. Fed. R. Civ. P. 23(e)(2).

During the preliminary stage, the Court is required to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (quotation marks omitted). When making the determination, the Court must decide whether the proposed settlement "is within the range of possible

approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement." *Id.* (citations and quotations omitted). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (citations omitted). After determining the fairness of the settlement terms, the Court must then "communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and . . . authorize the manner and form of dissemination of the notice." *Family Med. Pharm.*, 2016 U.S. Dist. LEXIS 173255 at *12 (citation omitted).

### III.   PRELIMINARY APPROVAL

#### A. Settlement Class Certification

In the Motion, the parties seek preliminary approval of the Settlement Agreement. (Doc. 87.) The Settlement Agreement contemplates its preliminary approval, certification of a settlement class, and ultimately, after the fairness hearing, entry of a final order certifying the settlement class and approving the settlement. (*Id.* at 18.)

##### 1. Rules 23(a) and 23(b)(2) Factors

A class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims of the representatives are typical of the claims of the unnamed

members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). These prerequisites to class certification are referred to as "numerosity, commonality, typicality, and adequacy of representation," and are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The burden of establishing the propriety of class certification rests with the advocate of the class. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). In addition to the prerequisites of Rule 23(a), at least one of the three alternative subsections of Rule 23(b) must be satisfied to certify a class. *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009).

In this case, Plaintiffs previously sought and were granted class certification under Rule 23(b)(2). (Doc. 86.) Rule 23(b)(2) was "intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) (quoting *Penson v. Terminal Trans. Co.*, 634 F.2d 989, 993 (5th Cir. 1981)). Defendant did not contest Plaintiffs' attempt to certify a class under Rule 23(b)(2). (Doc. 83.) However, even when the parties have not contested an element of Rule 23, "a court nevertheless has the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case." *Id.*

Most of these factors relating to certification have been previously addressed by the Court on the record and resolved in favor of proceeding with the class action. *See* Order at Doc. 86. Other matters that were not addressed when the class was initially certified are discussed below.

### 2. Settlement Class Definition

In cases certified before settlement, "the only class certification issues at the settlement stage concern whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." *Venerus v. Avis Budget Car Rental, LLC*, No. 6:13-cv-921-CEM-DAB, 2022 WL 2441903, at *3 (M.D. Fla. June 24, 2022) (citing 4 Newberg on Class Actions § 13:18 (5th ed. Dec. 2021), *report and recommendation adopted*, 2022 WL 2440519 (M.D. Fla. July 5, 2022)). The only difference between the Proposed Settlement Agreement Class definition and the Class definition certified in the Court's Class Certification Order (Doc. 86) is a non-substantive addition of the words "Title IX" after citing 20 U.S.C. § 1681 in the Class definition. (Doc. 87 at 5.)

Compare the Certified Class definition:

> All present and future male students at the Florida Institute of Technology, Inc., who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes, in compliance with the requirements of 20 U.S.C. § 1681 *et. seq*.

(Doc. 86 at 2) with the parties' Proposed Settlement Agreement Class

definition:

> All present and future male students at the Florida Institute of Technology, Inc., who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes, in compliance with the requirements of 20 U.S.C. § 1681 *et. seq*. **(Title IX)**.

(Doc. 87 at 5) (emphasis added). Since the slightly modified Settlement Agreement Class definition does not change the class certified, or change the claims, defenses, or issues regarding which certification was granted, I recommend that the Court approve the Settlement Agreement Class Certification.

### 3. Fairness, Reasonableness, and Adequacy of Proposed Settlement

As previously stated, the Court has already addressed the commonality, numerosity, typicality, and adequacy of representation factors. (Doc. 86). No basis for reconsidering those conclusions is present in the instant Motion. Therefore, the undersigned will now assess the fairness, reasonableness, and adequacy of the proposed Settlement Agreement.

The Court may approve a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). The Court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;

>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
>  (D) the proposal treats class members equitably relative to each other.

*Id*. Further, the Eleventh Circuit has instructed district courts to consider the following factors: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; 4) the anticipated complexity, expense, and duration of litigation; 5) the opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).

After reviewing these factors and the parties' Motion, the undersigned concludes as follows:

Class counsel adequately represented the class by vigorously pursuing this litigation. This is evidenced by Class counsel's obtaining a preliminary injunction in this matter, despite facing opposition from Defendant, after an evidentiary hearing that lasted almost four hours. (Docs. 28, 57, 61.) It is also further evidenced by the parties' arms-length negotiations, which included months-long settlement negotiations, a mediation, and post-mediation follow-up negotiations between counsel. (Doc. 87 at 14.)

Considering the costs, risks, and delay of trial and appeal, the anticipated complexity, expense, and duration of the litigation, the effectiveness of the distribution

of relief to the class, the terms of attorney's fees, any agreements made in connection with the Settlement Agreement, and the likelihood of success at trial, the undersigned concludes the relief provided to the Class in the Settlement Agreement is fair and adequate for the reasons set forth below.

First, although Plaintiffs believe that the claims asserted in this action are meritorious and that the Class would ultimately prevail at trial, they recognize and understand the risks of continued litigation against Defendant, which may make any recovery for the Class uncertain. (*Id*. at 15–16.) Second, there is no deficiency in the method of distributing relief to the class because the parties, through the Settlement Agreement, seek to convert the Preliminary Injunction obtained from this Court into a Final Injunction for a duration of three years from the first day of the 2023–2024 academic year. (87-1 ¶ 5a.) In addition, the terms of the Settlement Agreement will remain effective for a period of five years, from the first day of the 2023–2024 academic year to the last day of the 2027–2028 school year. (*Id*. ¶ 5b.) It will also preserve and continue the existence of the men's rowing and cross-country teams with full funding, staff, and benefits for those five years. (*Id*. ¶ 5c.) Defendant also will not include students participating in E-Sports in its Title IX Athletics Requirement Compliance Plan, unless they are formally recognized as a sport by the appropriate governing body, and will not include students enrolled solely in Defendant's online school program. (*Id*. ¶ 5d.) Lastly, the parties agree to the appointment of a mutually agreed-upon neutral, subject to the Court's approval, to review Defendant's current plan for compliance with Title IX, prepare an initial assessment of Defendant's current

compliance, provide an annual report to the Court as to the ongoing status of Defendant's compliance, provide the parties with an opportunity to comment on the neutral's draft report to the Court, and allow the neutral to provide comments and recommendations regarding Defendant's compliance pursuant to the Settlement Agreement. (*Id*. ¶ 5e.) The undersigned finds that the parties' proposed reforms outlined in the Settlement Agreement are effective ways to grant the Class Members relief.

Third, turning to the terms of any proposed award of attorney's fees, including timing of payment, the undersigned finds that the proposed award and timing of payment are reasonable because Class counsel are seeking $350,000 in fees, fees were not negotiated until after the parties had agreed to the Class Members' relief, and Class Counsel will move for fees at least fourteen days before the final fairness hearing, giving the Court the ability to scrutinize the amount of fees requested. (Doc. 87 at 18); *see Wright v. S. New Hampshire Univ.*, 1:20-cv-609, Doc. 37 at 5 (D.N.H. Sept. 22, 2021) (final order approving $416,666.66 fee award for class counsel to come out of $1,250,000.00 settlement fund obtained from class consisting of former and current university students who paid tuition and fees for in-person educational services that were canceled and moved online due to COVID-19).

Fourth, the parties do not indicate that there are any agreements that must be disclosed under Rule 23(e)(3), and the Settlement Agreement treats the class members equitably: all Class members will receive the benefit of Defendant's full compliance with Title IX requirements, as defined in the Settlement Agreement, and none of the

Class Representatives requested a service award. (Doc. 87 at 17.)

Finally, considering whether there was opposition to the settlement and the stage of proceedings at which the settlement was achieved, the undersigned finds that the Settlement Agreement is reasonable because Defendant does not oppose the Settlement Agreement, and the parties have litigated this case for almost two years, which included a contested preliminary injunction hearing, settlement negotiations, and mediation. (Doc. 87)

Therefore, after analyzing all the fairness factors, I recommend that the Court preliminarily approve the Settlement Agreement (Doc. 87-1).

## IV.  NOTICE

The undersigned further concludes that the notice provided for in the class action Settlement Agreement submitted by the parties is adequate. Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). Unlike the more stringent notice requirements under Rule 23(b)(3), the Rules merely state that in a Rule 23(b)(2) case, such as this one, "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).

The parties' proposed notice outlines the basic terms of the Settlement Agreement; details the factual background and procedural history of the action; and provides a description of the class, the reasons and benefits of the settlement, the scope of the releases, counsel's anticipated fees, the whereabouts, date, and time of the final approval hearing, and the rights of the potential class members to object to the Settlement Agreement and to appear at the hearing. (Doc. 87-4.) Furthermore, counsel

for Plaintiffs and Defendant are identified in the proposed notice, as are the addresses and telephone numbers where potential Class members may contact them for additional information. *Id.* The parties represent that Defendant will provide notice to currently enrolled male student varsity athletes via email, as well as by posting the proposed notice on Defendant's website. (Doc. 87 at 9.)

Accordingly, I recommend that the Court find that the proposed notice complies with Rule 23(e).

V. **THE FINAL APPROVAL SCHEDULE**

The parties request that the Court set deadlines for briefing on the parties' forthcoming Joint Motion for Final Approval, Plaintiffs' forthcoming motion for attorneys' fees, and expenses, and set a final approval hearing date. (Doc. 87 at 2.) Therefore, I recommend that the Court determine a date for the final approval hearing that is at least 90 days from the date the Court enters a Preliminary Approval Order. I further recommend the following schedule leading up to the final approval hearing:

| | |
|---|---|
| Deadline for Objections | 60 days after Class Notice is emailed to current male student athletes or posted on Florida Institute of Technology's website, whichever is later |
| Deadline for Motion for Attorneys' Fees and Costs, Class Settlement Administration Costs | 14 days before Objections Deadline |
| Deadline for filing Motion for Final Approval | 10 days before Final Approval Hearing |
| Final Approval Hearing | To be determined by the Court (at least 90 days from date Preliminary Approval Order entered) |

## VI. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Joint Motion and Memorandum of Law for Preliminary Approval of Class Action Settlement (Doc. 87);

2. Preliminarily **APPROVE** the parties' Settlement Agreement (Doc. 87-1);

3. **APPROVE** the parties' proposed notice (Doc. 87-4) to potential Class members;

4. **SET** a final fairness hearing for a date at least 90 days from the date of any Order adopting this Report and Recommendation.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on June 20, 2024.

- 14 -

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE