## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
Case No. 6:22-CV-01950-CEM-EJK

JOSHUA NAVARRO, et al., and on
behalf of similarly situated individuals,

      Plaintiffs,

v.

FLORIDA INSTITUTE OF TECHNOLOGY,
INC., a Florida corporation,

      Defendant.

_____/

## JOINT MOTION AND MEMORANDUM OF LAW FOR MOTION FOR FINAL APPROVAL OF THE PROPOSED CLASS SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Joshua Navarro, Benjamin Komita, Jaden Krekow, Kyle Stewart, Mason Yaskovic, Thomas Francis, David Adler, Reese Van Putten, Brycen Haner, Ryan Zerneke, and Erik Laari, ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, AND Defendant Florida Institute of Technology, Inc. ("Defendant" or "Florida Tech"), hereby move this Court for Final Approval of the Proposed Class Settlement.

In support thereof, the parties rely upon this Memorandum in Support of the Final Motion for Preliminary Approval of Class Settlement; the Settlement Agreement and Release ("Settlement Agreement") attached as **Exhibit 1**; the

Court's Preliminary Injunction Order (Doc. No. 61); the Declaration of Arthur Schofield in Support of Final Approval ("Schofield Declaration") attached as **Exhibit 2**; the Declaration of Dr. Wesley D. Sumner attached as **Exhibit 3**; the Declaration of Brian Ehrich attached as **Exhibit 4**; and the records, pleadings, and papers filed in this action and such other evidence or argument that may be presented to the Court.

## I.    INTRODUCTION

Plaintiffs and the Settlement Class have reached a class action settlement with Defendant, including a three-year injunction, to resolve claims arising from the allegations concerning Florida Tech's alleged violation of Title IX of the Educational Amendments of 1972 (20 U.S.C. § 1681 *et seq*.) ("Title IX") as set forth in the Plaintiffs' Amended Complaint. (Doc. No. 87)  *See* Settlement Agreement, **Exhibit 1**.

The settlement provides significant relief and lies well within the range of reasonableness necessary for this Court to grant final approval of the class action settlement under Rule 23(e). The Court should, therefore, approve the settlement. A detailed Court-approved Notice of Settlement of Class Action ("Notice") that outlined the Settlement terms at length was sent to and received by 243 Class Members. The Notice was also posted prominently on Florida Tech's main web site, the landing page of the Athletic Department's web site, and the web site of Lead

Counsel, Arthur T. Schofield, P.A. *The reception by the Class has been overwhelming: Not a single Class Member objected to the Settlement.*

Federal Rule of Civil Procedure 23 ("Rule 23") sets forth the procedures for district courts to conduct class actions and requires specific notice to the class of any proposed settlement. Fed. R. Civ. P. 23(d), (e)(1). No class action may be settled without court approval. Fed R. Civ. P. 23(e)(2). The decision of whether to approve or reject a settlement "is left to the sound discretion of the trial court." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[S]ettlements are 'highly favored in the law' because 'they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.'" *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1257 (11th Cir. 2021) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977)). As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett*, 737 F.2d at 986; *see also Jairam v. Colourpop Cosmetics, LLC*, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) ("Federal courts have long recognized a strong policy and presumption in favor of class action settlements."). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Ass'n for*

*Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 13:44 (4th ed. 2002) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

"A class action may be settled only with court approval, which requires the court to find the settlement 'fair, reasonable, and adequate' based on a number of factors." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d at 1273 (quoting Fed. R. Civ. P. 23(e)(2)). The Eleventh Circuit has also directed consideration of several additional factors, called the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

Courts, however, should not convert settlement fairness hearings into trials on the merits or mini-trials. *See United States v. Knight*, 271 Fed. Appx. 896, 902 (11th Cir. 2008) ("[I]t cannot be overemphasized that neither the trial court in approving the settlement nor this Court in review of that approval have the right or

the duty to reach any ultimate conclusions on the issues of fact or law which underlie the merits of a dispute.") (quoting *Cotton*, 559 F.2d at 1330). "A trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991); *see also Cotton*, 559 F.2d at 1330 (holding that a trial judge "should be hesitant to substitute its own judgment for that of counsel"); *Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Instead, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 675 (S.D. Fla. 2006) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). After all, the very purpose of a settlement is to avoid the need to determine sharply contested issues and to dispense with expensive litigation and discovery. *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981) (considering whether to approve a class settlement, courts "do not decide the merits of the case or resolve unsettled legal questions").

## II.    BACKGROUND

### A. Procedural History

This is a class action brought by Plaintiffs on behalf of themselves and a class of:

> All present and future male students at the Florida Institute of Technology, Inc. who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes.

(Doc. No. 71).   This case arises from Florida Tech's realignment of collegiate athletic activities in 2022.  Specifically, on June 28, 2022, Florida Tech announced that it would be terminating its intercollegiate men's rowing, cross-country, and golf programs for the upcoming school year.  (Doc. No. 71)

In response, on October 24, 2022, Plaintiffs filed their four-count class action lawsuit styled *Navarro, et al. v. Florida Institute of Technology, Inc.*, alleging violations of Title IX, including for equal participation (Count I), equal treatment (Count II), equal scholarship activities (Count III), and for an injunctive relief (Count IV).  Plaintiffs re-asserted these Counts in their Amended Complaint, which was filed on April 17, 2023. (Doc. No. 71)

On  December  19,  2022,  Plaintiffs  filed  their  Motion  For  Preliminary Injunction. (Doc. No. 28) The Court held an evidentiary hearing on February 1,

2023, (Doc. No. 57), and issued its Order granting the motion for preliminary injunction on February 17, 2023. (Doc. No. 61)

On July 13, 2023, the parties filed their Joint Motion to Certify Class (Doc. No. 83), which was conditionally granted by the Magistrate Judge's Report and Recommendation (Doc. No. 84) and was subsequently adopted in the Court's Order dated September 13, 2023. (Doc. No. 86)  The Court's Order adopting the Report and Recommendation also approved attorneys Arthur T. Schofield, James C. Larew, and Claire M. Diallo as class counsel.

**B. Negotiations and Settlement**

This settlement is the result of months of arms-length negotiation and hard bargaining.  Before entering into this Settlement Agreement, the parties engaged in mediation in early May, 2023, which did not result in a final resolution of the case. The parties continued negotiations throughout the summer of 2023 and, on September 14, 2023, arrived at a formal written settlement agreement.   The Settlement Agreement was fully executed on September 24, 2023, and is attached as **Exhibit 1**.

During the four and a half months of negotiations, not including substantive attempts to resolve issues prior to litigation, the parties had the opportunity to exchange substantive information—including written and document discovery—regarding the underlying claims and defenses in the case.  Both Plaintiffs and

Defendant were able to evaluate the risks and costs of continued litigation. The parties' Joint Motion to Certify Class, which followed Plaintiffs' original motion, arose consequently from these negotiations, and reflects the parties' mutual desire to preserve resources to better serve the needs of the class members and all student varsity athletes at Florida Tech.

This settlement, if approved, will resolve all claims raised in the Amended Complaint.

### C. Summary of Settlement Terms

The Settlement Agreement defines the Class as follows:

> **All present and future male students at the Florida Institute of Technology, Inc., who participate or will participate in intercollegiate athletics and are thus entitled to: (1) the allocation of athletic participation opportunities; (2) the allocation of benefits provided to varsity athletes; and (3) the allocation of student financial aid to varsity athletes, in compliance with the requirements of 20 U.S.C. § 1681, et seq. (Title IX).**

*See* Settlement Agreement, Settlement Class Definition.[1]

Each of the named Plaintiffs were appointed as class representatives, and Attorneys Schofield, Larew, and Diallo were named as class counsel. *See* Settlement Agreement ¶¶ 3-4. It is estimated that the Class is comprised of approximately 243 male student varsity athletes currently enrolled at Florida Tech, in addition to the

---

[1] The Class Definition approved by the parties in the Settlement Agreement is substantively identical to the definition previously approved by the Court, with the only distinction being the addition of "Title IX" at the end. (Doc. No. 86)

unknown number of future student varsity athletes who will benefit from this settlement.

### 1.    Settlement Benefits

The Settlement will provide broad relief to the Class. First, the current preliminary injunction will be converted into a Final Injunction for a duration of three years from the first day of academic year the 2023/2024 academic year. Settlement Agreement ¶ 5(a).

Second, the terms and conditions of the Settlement Agreement shall remain in effect for a period of five (5) years from the first day of the 2023/2024 academic year and shall expire on the last day of the 2027/2028 academic year. Settlement Agreement ¶ 5(b).

Third, throughout the five-year duration of this Settlement Agreement, Florida Tech will preserve and continue the existence of the men's rowing and men's cross-country teams, and will provide each team with full funding, staffing, and other benefits commensurate with their status as varsity-level intercollegiate teams, as required by the Court's Order granting Plaintiffs' Motion for Preliminary Injunction. The Parties understand that while the men's rowing team is presently almost half its previous size, it is their collective aspiration to increase the team size, to have multiple competitive boats, and an operating budget commensurate with the expanding needs of the team. Settlement Agreement ¶ 5(c).

Fourth, Florida Tech will not consider, count, or include students participating in E-Sports for any purpose in its Title IX Athletics Requirement Compliance Plan, unless and until such time that E-Sports are recognized as a sport, or emerging sport, by the NCAA, by an appropriate court of competent jurisdiction, or by the Department of Education. In addition, Florida Tech will not consider, count, or include students enrolled solely in Florida Tech Online (who are not included in any EADA reports) for any purpose in its Title IX Athletics Requirement Compliance Plan. Settlement Agreement ¶ 5(d).

Fifth, the Parties agreed to the appointment of a mutually agreed neutral, subject to the Court's approval ("Neutral"), whose expenses and compensation shall be capped at $25,000 for the first year, not to exceed an additional $25,000 for the remaining two years of the engagement, and shall be borne solely by Florida Tech. Settlement Agreement ¶ 5(e). The Neutral's duties, as set forth in more detail in the Settlement Agreement, will include the following:

- Review Florida Tech's current plan for compliance with Title IX's requirements as set forth in: 34 C.F.R. § 106.41(c)(1); and athletic financial assistance (34 C.F.R.§ 106.37(c); 106.41(c)(2-10)); Title IX of the Education Amendments of 1972; A Policy Interpretation: Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71413-71423 (Dec. 11, 1979) ("Policy Interpretations") (collectively "Title IX Athletics Requirements") Settlement Agreement ¶ 5(e)(i);
- Prepare an initial assessment of Florida Tech's current compliance with the Title IX Athletics Requirements;
- Provide an Annual Report to the Court of the status of Florida Tech's compliance with the Title IX Athletics Requirements, as defined above. Settlement Agreement ¶ 5(e)(iii)(B);

- Provide opportunities for the parties to comment on the Neutral's draft reports.  Settlement Agreement ¶ 5(e)(iii)(A)-(C); and
- The Parties agree that the Neutral must agree to Florida Tech's Title IX Athletics Compliance Plan unless he/she can demonstrate to the Court through the Annual Report that the Plan would fail to bring the program into compliance with Title IX's Athletic Requirements.  The Parties further agree that the Neutral is free to provide his/her comments and alternative recommendations regarding Florida Tech's compliance in the Annual Reports, notwithstanding Florida Tech's compliance under this paragraph.

Settlement Agreement ¶ 5(e)(iii)(C). The Defendant proposed one Neutral who was not acceptable to the Plaintiffs.  Plaintiffs proposed three Neutrals and as of the date of this filing, Defendant has not accepted, rejected or proposed other Neutrals. The parties will provide a supplemental filing identifying the Neutral prior to the Fairness Hearing, for whose appointment they seek approval by the Court.

## 2.    Scope of the Release

In exchange for consideration above, Class Members agree to fully and finally release Florida Tech from those claims arising from or relating to the claims set forth in the Amended Complaint that were or could have been brought in this lawsuit, arising from the beginning of time to the effective date of the settlement, and shall be included within the general mutual release to be executed as a condition of this settlement.  Settlement Agreement, ¶ 2.

## 3.    The Notice and Response

Under the Settlement Agreement, and pursuant to Fed. R. Civ. P. 23(c)(2)(A), 23(e), and 23(h), Florida Tech provided notice acceptable to the Plaintiffs and to the

Court of the proposed class action settlement, the date and time for the final approval hearing, and application for attorneys' fees to all current, presently enrolled male student varsity athletes.  Settlement Agreement ¶ 8. The Notice was sent via email to current varsity student athletes and posted on Florida Tech's website, the landing page of Florida Tech's Athletic Department, and the website of Lead Counsel, Arthur T. Schofield, P.A.

The Class overwhelmingly expressed support for the Settlement. Not a single individual objected to the Settlement. Schofield Decl., at ¶¶5-7, **Exhibit 2**; Sumner Decl., at ¶¶3-7, **Exhibit 3**; Ehrlich Decl., at ¶¶5-8, **Exhibit 4**. Given the Court's preliminary approval of the Settlement and the full endorsement of class members, the Settlement should be approved in its entirety.

### 4.    Attorneys' Fees, Costs, Expenses, and Service Awards

Plaintiffs separately seek an award of attorneys' fees and costs through their Motion for Attorneys' Fees and Costs.

## III.    LEGAL STANDARD TO EFFECTUATE THE SETTLEMENT, THE COURT SHOULD FINALIZE ITS CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS

As part of the final approval process, the Court also reviews the class certification to confirm its appropriateness for the settlement. *See Ault v. Walt Disney World*, No. 6:07-cv-1785-Orl-31KRS, 2011 U.S. Dist. LEXIS 45268, at *5 (M.D. Fla. Apr. 4, 2011) (reviewing first step of whether to "grant final class certification").

Rule 23 sets forth a number of requirements that a class action must meet in order for a district court to certify the class. First, all four requirements in Rule 23(a) must be satisfied: (1) the class must be "so numerous that joinder of all members is impracticable," (2) there must be "questions of law or fact common to the class," (3) the class representatives' claims or defenses must be "typical" of the class's claims or defenses, and (4) the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). "These four requirements are often referred to as the numerosity, commonality, typicality, and adequacy requirements, respectively." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d at 1275 (citing *Vega*, 564 F.3d at 1265). In addition to meeting these four requirements, a class action must also satisfy one of the three parts of Rule 23(b). Fed. R. Civ. P. 23(b); *see Vega*, 564 F. 3d at 1265. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court has an independent obligation to "conduct its own inquiry" that the Rule 23 class-certification standards are satisfied, regardless of whether any party has contested an element. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003). The Plaintiffs have the burden of establishing class certification is

appropriate. *Carriuolo v. General Motors Co.*, 823 F.3d 977, 981 (11th Cir. 2016)

(citing *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997)).  The class

here is hundreds of male student athletes whose claims involve common facts and

law and whose injury or complaint is identical.  Rule 23(a)(1)'s numerosity standard

is met.  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Likewise, the other Rule 23(a) factors are not an issue in this case. Under Rule

23(a)(3), a "class representative must possess the same interest and suffer the same

injury as the class members." *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir.

2004).  There is no question in this case that the class representatives met this

threshold.

The class satisfies Rule 23(a)(2) because the commonality requirement is

easily met.  The evidence the plaintiffs would offer at an individual trial to establish

liability would be the same sort of evidence that every member of the proposed Class

would also have to offer at their own individual trials.  Here, use of the class action

device is superior to other available procedural methods for adjudicating the claims

at issue in this case. The damages or other financial detriment suffered by the

Plaintiffs and other Class Members are relatively small compared to the burden and

expense that would be entailed by individual litigation of their claims against Florida

Tech.  Thus, members of the Class would have little interest in pursuing their own

separate actions.

The adequacy requirement has two prongs: First, the interests of the representative party should not conflict with the interests of any of the class members. *Clough*, 2019 WL 2527300, at*4. Second, class counsel should be "qualified, experienced and able to vigorously conduct the proposed litigation." *Id*. Here, both Rule 23(a)(4) and Rule 23(g) are satisfied. (*See* Doc. No. 84 and 86) ("Plaintiffs have and will continue to vigorously prosecute this action, as evidenced by their sought after and obtained preliminary injunction.")

After making the prerequisite showing for a class action, Plaintiffs must also demonstrate that this action falls within the categories identified in Rule 23(b). *Diaz v. Hillsborough Cnty Hosp. Auth.*, 165 F.R.D. 689, 694 (M.D. Fla. 1996). Certification of a class may be appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). This subsection was "intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive relief against discriminatory practices." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) (quoting *Penson v. Terminal Trans. Co.*, 634 F.2d 989, 993 (5th Cir. 1981)).

Defendant Florida Tech did not contest Plaintiffs' attempt to certify a class under Rule 23(b)(2), and in fact joined in the request. (Doc. No. 83.) The remedy

sought is injunctive relief against allegedly discriminatory practices that affect the ability of past, present, and future FIT male students to receive equal athletic opportunities. (*See* Doc. No. 78.) The requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." *Hughes v. Judd*, No. 8:12-cv-568-T-23MAP, 2013 WL 1821077, at *25 (M.D. Fla. March 27, 2013) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 59 (3d Cir. 1994)).

Accordingly, a Rule 23(b)(2) class action is appropriate.

## IV. THE COURT SHOULD APPROVE THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE UNDER RULE 23(e)

At the final approval stage, the fairness analysis is guided by Rule 23(e), which states that a district court should approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

**(A)** the class representatives and class counsel have adequately represented the class;
**(B)** the proposal was negotiated at arm's length;
**(C)** the relief provided for the class is adequate, taking into account:
    **(i)** the costs, risks, and delay of trial and appeal;
    **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
    **(iv)** any agreement required to be identified under Rule 23(e)(3); and
**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The first prong of Rule 23(e)(2) directs the Court to consider whether the class representatives and class counsel have adequately represented the class.  Fed. R. Civ. P. 23(e)(2)(A).  Traditionally, adequacy of representation has been considered in connection with class certification.  For this analysis, courts consider: "(1) whether [the class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007).

The class representatives and class counsel have adequately represented the class.  Adequacy of representation is primarily based on "the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class" and "whether plaintiffs have interests antagonistic to those of the rest of the class." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003).  Here, class members' interests were aligned, and there were no counter interests in getting men's teams reinstated.  In addition, the work of the Neutral will assure that all class members' interests are treated fairly.  Class Members have responded favorably to the settlement.

The Court approved class counsel. The Court has been able to observe class counsels' diligence, ability, and experience in pleadings and motion practice; in their presentation of the settlement to this Court; and in their attention to matters of

notice and administration after the announcement of the settlement. The excellent job Class Counsel have done for the class is also demonstrated in the benefits afforded by the Settlement.

With respect to the second factor under Rule 23(e)(2), the Settlement was the result of arm's-length negotiations between experienced class action attorneys. The Court has observed the zeal with which counsel for the parties have advanced their clients' interests in this case, their written work, and their oral advocacy at the hearing for the preliminary injunction. Further, the Settlement was achieved only after a full-day mediation with Travis Hollifield, a well-respected mediator, and continued negotiations for several months thereafter to finalize the specific settlement terms. *See generally Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (holding that the presence of "highly experienced mediator" pointed to "absence of collusion").

Further, the terms of the Settlement belie any sort of self-dealing or other conflict-of-interest concerns. The Settlement offers all Class Members the same form of relief. Additionally, Class Counsel is not seeking reimbursement of more costs than were incurred in the prosecution of the action, and the fee award sought is in line with those approved in similar settlements in this circuit. Neither Settlement Plaintiffs nor Class Counsel are disproportionately rewarded in relation to the Settlement class itself.

The third factor the Court considers under Rule 23(e)(2) is the relief provided for the class taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

The Plaintiffs retained Dr. Donna Lopiano, a well-respected expert witness in Title IX. While Defendant did not retain an expert witness prior to the Settlement, there is no question that Defendant would have. Therefore, if litigation had continued there would have been a "battle of experts" with its attendant costs. The relief sought would have hotly been contested, including the review of the entire Athletic Department by an independent expert, or Neutral. In sum, continuing this action without a settlement would have involved several major litigation risks and delays, including, but not limited to, motions for summary judgment, *Daubert* motions, trial, as well as potential appellate review.

The stage of the proceedings and the discovery completed weigh in favor of approval. When considering these factors, courts will look to "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating."

*In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1348 (S.D. Fla. 2011). While negotiations began at an early stage, this action was settled only after significant discovery was conducted. Moreover, the preliminary injunction hearing is an early mini-trial on the merits, and occurred only after significant evaluation of publically-available information. Class Counsel also evaluated thousands of pages of discovery and retained and worked with their expert to evaluate the merits of the claims and the relief sought, giving them a clear view of the strengths and weaknesses of the case before agreeing to and recommending approval of the Settlement.

The fourth and final factor under Rule 23(e)(2) directs the court to consider whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). According to the advisory committee notes, this factor is closely related to the adequacy requirement of Rule 23(a). The court expressly considers whether the settlement provides equitable "treatment of some class members vis-à-vis others," and whether the settlement apportions "relief among class members [that] takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways." Adv. Comm. Notes 23(e)(2) (2018).

The "unanimous approval of the proposed settlements by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed

settlements." *In re Art Materials Antitrust Litig., MDL* No. 436, 100 F.R.D. 367,
372 (N.D. Ohio 1983); *see also Lipuma v. Am/ Express Co.*, 406 F. Supp. 2d 1298,
1324 (S.D. Fla. 2005). The "small number of objectors from a plaintiff class of
many thousands is strong evidence of a settlement's fairness and reasonableness."
*Ass'n for Disabled Ams., Inc.*, 211 F.R.D. at 467; *accord Mangone v. First USA
Bank*, 206 F.R.D. 222, 227 (S.D. I11. 2001) ("In evaluating the fairness of a class
action settlement, such overwhelming support by class members is strong
circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Penn.
Dept. of Corrections,* 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class
members are presumed to know what is in their best interest, the reaction of the
class to the Settlement Agreement is an important factor for the court to consider.").
Here, the fact that no Class Member objected to the settlement is powerful evidence of its
fairness. Student athletes work hard to maintain their grades and participate in sports, and
accepted the settlement without challenge. While apathy can be an issue in class actions, the
fact that the student athletes received emails, and were invited to call to discuss any issues, but
did not do so, is evidence of finding the settlement viscerally just.

Given the terms of the proposed settlement, the parties' discovery efforts, their
arms-length negotiations, and the participation of experienced counsel, the
settlement proposal should be deemed fair, reasonable, and adequate.

## V.    CONCLUSION

The Settlement Agreement is fair, adequate and reasonable and meets the criteria for approval of class action settlements. The Settlement Agreement is the product of arm's-length negotiation between Counsel for the Parties, and the benefits of the settlement outweigh the uncertainty and added time and expense that continued litigation of this matter would entail. Plaintiffs therefore respectfully request that the Court grant Plaintiffs' application for final approval of the Settlement Class and enter an order Granting Final Approval of the Proposed Class Action Settlement and enter Final Judgment.

Respectfully submitted,


*/s/Arthur Schofield, Esq.*
ARTHUR T. SCHOFIELD, P.A.
Via Jardin
330 Clematis Street, Suite 207
West Palm Beach, FL 33401
(561) 655-4211
Fla. Bar No. 984434
Aschofield@flalabor.com


ATTORNEYS FOR PLAINTIFFS


*/s/ Drew H. Campbell*
**BRICKER GRAYDON LLP**
Matthew D. Gurbach (*admitted phv*)
(Ohio Bar No. 0076707)
Kasey Nielsen (*admitted phv*)

*/s/James C. Larew, Esq.*
*/s/Claire M. Diallo, Esq.*
James C. Larew, Esq.
Claire M. Diallo, Esq.
LAREW LAW OFFICE
504 E. Bloomington Street
Iowa City, IA 52245
(319) 337-7079
James.Larew@LarewLawOffice.com
Claire.Diallo@LarewLawOffice.com


*/s/Richard L. Barry*
**GRAY | ROBINSON, P.A.**
Richard L. Barry  (360650)
Richard E. Mitchell  (168092)
301 East Pine Street, Suite 1400

(Ohio Bar No. 0101069)
1350 Euclid Avenue, Suite 650
Cleveland, Ohio  44115
t: 216.523.5405
f: 216.523.7071
mgurbach@bricker.com
knielsen@bricker.com

Drew Campbell (*admitted phv*)
(Ohio Bar No. 0047197)
Jeffrey Knight (*admitted phv*)
(Ohio Bar No. 0086649)
100 South Third Street
Columbus, Ohio  43215
t. 614.227.2300
f. 614.227.2390
dcampbell@brickergraydon.com
jknight@brickergraydon.com

*Co-Counsel for Florida Institute of Technology, Inc.*

Orlando, Florida  32802
t: (407) 843-8880
f: (407) 244-5690
richard.barry@gray-robinson.com
rick.mitchell@gray-robinson.com

*Co-Counsel for Florida Institute of Technology, Inc.*